**UNITED STATES of America**

v.

**1964 FORD THUNDERBIRD, MOTOR AND SERIAL NUMBER 4Y85Z156657.**

**Appeal of Webster BIVENS, Claimant.**

**Civ. A. No. 17363.**

United States Court of Appeals, Third Circuit.

Argued Dec. 3, 1968.

Decided June 25, 1971.

Norman Schulaner, Sachar, Sachar & Bernstein, Plainfield, N. J., for appellant.

Elliot Scher, Asst. U. S. Atty., Newark, N. J., for appellee.

Before HASTIE, Chief Judge, and KALODNER and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from an April 19, 1968, order of the United States District Court for the District of New Jersey decreeing the forfeiture of a 1964 Ford Thunderbird automobile, motor and serial number 4Y85Z156657, pursuant to 49 U.S.C. §§ 781–82 (1964), and dismissing a counterclaim for money damages.[1] 49 U.S.C. § 781 (1964) provides in relevant part:

(a) It shall be unlawful (1) to transport * * * any contraband article in, upon, or by means of any * * * vehicle * * *; (2) to conceal or possess any contraband article in or upon any * * * vehicle * * *; or (3) to use any * * * vehicle * * * to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.

(b) As used in this section, the term "contraband article" means—

(1) any narcotic drug which has been or is possessed with intent to sell or offer for sale in violation of any laws or regulations of the United States dealing therewith; or which has been acquired or is possessed, sold, transferred or offered for sale, in violation of any laws of the United States dealing therewith; * * * or which does not bear appropriate tax-paid internal-revenue stamps as required by law or regulations. * * *

49 U.S.C. § 782 (1964) provides in relevant part:

Any * * * vehicle * * * which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited * * *.

On the evening of September 1, 1964, agents of the Federal Bureau of Narcotics and Dangerous Drugs were conducting a surveillance in New York City in the vicinity of Seventh Avenue and 135th Street as a part of a major narcotics investigation. One of the objects of the surveillance was one Webster Bivens, the appellant, who owned the automobile ordered forfeited in this case. The primary object of the surveillance was one Leroy Gaines, also known as Leroy Davis, who was thought to be a major narcotics violator in Harlem. The agents testified that they observed Bivens and Gaines converse on the sidewalk, and then get inside the automobile ordered forfeited, which was parked in the early morning hours of September 2 at the scene of the surveillance. According to the testimony, Gaines and an unidentified young lady got in the front seat, and Bivens got in the back seat. One of the agents, Agent Feldman, testified that Bivens and the automobile ordered forfeited were known to the agents conducting the surveillance, because on a prior occasion Bivens had made a sale of heroin from the automobile to one Agent Scott. The agents tes-

---

1. We delayed disposition of this case pending disposition by the Supreme Court of the United States of United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (Opinion of April 5, 1971), in which a writ of certiorari was granted on Nov. 18, 1968 (393 U.S. 949, 89 S.Ct. 375, 21 L.Ed.2d 361).

tified that the automobile with its three occupants drove away from the scene of the surveillance, and was followed by the agents. An agent testified that the automobile ran through several red lights, made several U-turns, and travelled at inordinately fluctuating rates of speed in an area consisting of several blocks, and then returned to the scene of the original surveillance and stopped. Throughout much of this unusual trip, Bivens was observed peering out of the rear window of the automobile. Agent Feldman testified that he then observed Gaines lean over the back of the front seat, and "touch hands" with Bivens. Gaines and the young lady then left the automobile, and Bivens got into the front seat of the automobile and drove off. Agent Feldman and other agents followed Bivens, who, according to the agents' testimony, drove the wrong way down one-way streets, speeded up the automobile to "about eighty miles an hour," and crossed the George Washington Bridge which leads into New Jersey "at a speed of about ninety to one hundred miles per hour." Once into New Jersey, the agents stopped the automobile, arrested Bivens, and searched the automobile. The search turned up two glassine envelopes of heroin, neither of which bore the federal tax stamps required by 26 U.S.C. §§ 4701, 4771(a) (1) (1964).[2] Since these packages of heroin did not bear the required federal tax stamps, they constituted contraband under 49 U.S.C. § 781 (1964), *supra.* The forfeiture was predicated upon the presence of this contraband in the automobile, and ordered pursuant to 49 U.S.C. § 782 (1964), *supra.*

## I.

## THE ARREST AND SEARCH

The agents did not have a warrant for the arrest of Bivens for a search of the automobile subsequently ordered forfeited. The Government argues, and the district court agreed, that the agents' testimony regarding the events of the early morning of September 2, combined with Agent Feldman's testimony that Bivens had on a prior occasion sold heroin from the automobile to one Agent Scott, establishes that the agents had probable cause to arrest Bivens without a warrant. It follows from this, the Government argues, that the arrest and search incident to the arrest were lawful. If the Government is correct about the existence of probable cause, it is correct that the arrest and search incident to the arrest were lawful, and that the evidence regarding the presence of heroin in the automobile was admissible in the forfeiture proceeding. Indeed, Bivens does not contend that the arrest and search would be unlawful, and the evidence regarding the heroin inadmissible, despite the existence of probable cause. Instead, Bivens contends that the Government did not successfully establish that the agents had probable cause to arrest him, that the arrest and search incident to the arrest were therefore unlawful, and that the evidence regarding the presence of heroin in the automobile was therefore inadmissible in the forfeiture proceedings.

In order to justify the arrest and search incident to the arrest, the Government must prove that its agents possessed sufficient information at the time of the arrest to support an inde-

---

2. 26 U.S.C. § 4701 (1964) provides in relevant part:
 (a) Rate.—There shall be imposed an internal revenue tax upon narcotic drugs, produced in or imported into the United States, and sold, or removed for consumption or sale, at the rate of 1 cent per ounce, * * *
 (b) By whom paid.—The tax imposed by subsection (a) shall be paid by the importer, manufacturer, producer, or compounder.

26 U.S.C. § 4771(a) (1) (1964) provides:
 (a) Method of payment.—
 (1) Stamps.—The taxes imposed by sections 4701 and 4741 shall be represented by appropriate stamps, to be provided by the Secretary or his delegate.
These statutes were repealed by Pub.L. No. 91–513, Tit. III, § 1101(b) (3) (A), 84 Stat. 1292 (Oct. 27, 1970).

pendent judgment that there was probable cause to believe that the federal narcotics laws were being or had been violated.[3] The determination of probable cause deals with probabilities which are the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). The substance of the matter is whether there "is a reasonable ground for belief of guilt." Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). A court evaluating the legality of a warrantless arrest and subsequent search of an automobile incident to such arrest must determine whether "the facts and circumstances within [the] knowledge [of the arresting officials] and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L. Ed.2d 142 (1964).[4] After making extensive findings of fact,[5] the district judge concluded that probable cause had been established. Appellant contends that the district judge applied the wrong standard in evaluating the facts, and bases this contention on the following statement made by the district judge:

> The Court must consider the expertise of these agents in their particular field. In reaching a determination as to whether a police officer has probable cause to believe that an offense has been, or is about to be committed the test to be applied is what one experienced in that particular field would find to be the reasonable cause. A layman untrained in police work would not have the same capacity to reach a reasonable determination of whether an offense was committed or about to be committed by particular conduct of a suspect, so the determination of whether there was reasonable cause to believe that an offense had been or was about to be committed must be determined in the light of what a reasonable-minded police officer had probable cause to believe.

> I have considered all of the testimony in this matter and find on the basis of the totality of the circumstances that Agent Feldman had reasonable cause to believe when he arrested Webster Bivens that a narcotics violation had been committed or was about to be committed and that the search which followed was an incident of a lawful arrest. (N.T. 197–98).

We agree with appellant that the district judge applied the wrong standard to the facts. The standard is not what a police officer trained in a particular field would conclude, but rather it is what a reasonable, prudent man would conclude.[6] We do not, however, believe that this error compels either a reversal

---

3. See Whitely v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), and cases cited in Part II therein.

4. *See also* Henry v. United States, 361 U. S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L. Ed. 1879 (1949).

5. Bivens contends that the testimony of Agent Feldman should not have been credited because Agent Feldman had made prior inconsistent statements in the course of testifying in a criminal proceeding against Bivens. The trial judge considered these prior inconsistent statements, which bear only on the credibility of a witness. *See* United States v. Small,

443 F.2d 497 (3rd Cir., filed May 20, 1971); United States v. Schwartz, 390 F. 2d 1 (3rd Cir. 1968). The trial judge concluded that the discrepancies in Feldman's two statements, one made two years after the event and the other made nearly four years after the event, were insufficient to render Agent Feldman's testimony in the forfeiture proceeding incredible. The trial judge must evaluate the credibility of witnesses and make findings based on those credibility determinations. We cannot say that the findings of fact in this case were "clearly erroneous." See Fed.R.Civ.P. 52(a); Fed. R.Crim.P. 23(c).

6. *See* Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Henry

or a remand to the district court. Reviewing courts may make an independent examination of the facts, the findings, and the record in order to determine whether the criteria of probable cause are met.[7] The district judge made extensive findings of fact in this case, and these findings regarding what the arresting officials knew or reasonably believed at the time of the arrest are more than sufficient to warrant a reasonable, prudent man in the belief that Bivens had committed or was committing a narcotics offense. What the Supreme Court said in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), involving a moving vehicle and contraband, and a warrantless arrest of the driver and search of the vehicle incident to the arrest, is applicable to the facts of this case:

> In [a moving vehicle case] the citizen who has given no good cause for believing he is engaged in [transporting contraband] is entitled to proceed on his way without interference. But one who recently and repeatedly has given substantial ground for believing that he is engaging in the forbidden transportation in the area of his usual operations has no such immunity, if the officer who intercepts him in that region knows that fact at the time he makes the interception and the circumstances under which it is made are not such as to indicate the suspect is going about legitimate affairs. 338 U.S. at 177, 69 S.Ct. at 1311.

■ In this case the agents knew that Bivens had sold heroin out of his automobile quite recently. Gaines was the focal point of a major narcotics investigation. Bivens and Gaines met on a sidewalk at approximately two o'clock in the morning, talked for a few moments, got into an automobile, drove around several blocks in an unusual fashion, and returned to the spot of the meeting. Gaines leaned over the back of the front seat, and his hand touched the hand of Bivens. Gaines and the young lady immediately got out of the automobile. Bivens drove away, driving in an erratic fashion and obtaining speeds in excess of eighty miles per hour in the nation's largest metropolitan center. Under these circumstances, we believe that a reasonable man would conclude that, far from "going about legitimate affairs," Bivens had committed or was committing a narcotics offense. Since there was probable cause for arrest without a warrant, the search was lawful, and the evidence regarding the presence of the heroin in the automobile was properly admitted in the forfeiture proceeding.

## II.

### THE FORFEITURE

The forfeiture was predicated upon Bivens' possession of heroin which was not in packages bearing the federal tax stamps required by 26 U.S.C. §§ 4701, 4771(a) (1) (1964), *supra* at note 2. Heroin which does not bear these stamps constitutes contraband under 49 U.S.C. § 781(b) (1) (1964), *supra,* and the presence of contraband in a vehicle requires the forfeiture of that vehicle pursuant to 49 U.S.C. § 782 (1964), *supra.*

In United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the Supreme Court emphasized that forfeiture proceedings, although civil in form, are criminal in nature, and, accordingly, that the fifth amendment applies in forfeiture proceedings to preclude forfeiture to the same extent that it would preclude a criminal conviction for the conduct on which the forfeiture proceeding is predicated. The Court in *Coin & Currency* also rejected the view that forfeiture statutes operate on property ir-

v. United States, 361 U.S. 98, 102, 80 S. Ct. 168, 4 L.Ed.2d 134 (1959); Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 161–162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

7. *See* Ker v. California, 374 U.S. 23, 24, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

respective of whether the owner of that property significantly participated in a criminal enterprise, and held that forfeiture statutes were intended to impose a penalty "only upon those who are significantly involved in a criminal enterprise." 401 U.S. at 91 S.Ct. at 1045.

Bivens argues that the decisions of the Supreme Court in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L. Ed.2d 57 (1969), Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923 (1968), Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968), and Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), establish that the fifth amendment provides Bivens a complete defense to a criminal charge based on the discovery of the unstamped heroin in Bivens' possession, and, accordingly, that the fifth amendment precludes forfeiture predicated on Bivens' possession of the heroin because it precludes a criminal conviction predicated on possession of the heroin.[8] This argument misconceives the rationale of the decisions in Leary, Haynes, Grosso and Marchetti.

In Leary, the Court held that the fifth amendment provided a complete defense to a prosecution for failure to obtain an order form and pay a tax imposed on transfers of marijuana pursuant to the requirements of the Marijuana Tax Act, 26 U.S.C. § 4741 (1964), et seq. In Haynes, the Court held that the fifth amendment provided a complete defense to a prosecution for possession of an unregistered weapon under the National

Firearms Act, 26 U.S.C. § 5851 (1964). In Grosso and Marchetti, the Court held that the fifth amendment provided a complete defense to prosecutions for failure to pay the excise tax imposed on wagering by 26 U.S.C. § 4401 (1964), and for failure to register and pay the occupational tax imposed on wagers by 26 U.S.C. § 4411–12 (1964). The rationale of these decisions is that full and literal compliance with these federal tax and registration statutes would expose persons to a "real and appreciable" risk of self-incrimination because the activities sought to be taxed were generally criminal under either state or federal law. See Leary v. United States, 395 U.S. 6, 16, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). The subsequent decision of the Court in Minor v. United States, 396 U. S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969), which dealt with the statutory scheme of the Harrison Narcotics Act, 26 U.S.C. § 4701 (1964) et seq., the statute involved in this case, and the decision of this court in United States v. Clark, 425 F.2d 827 (3rd Cir. 1970), demonstrate that the rationale of Leary, Haynes, Grosso and Marchetti is not applicable to the facts of this case. As we held in Clark, the fifth amendment does not provide a defense to a prosecution for purchase of heroin other than in or from the original stamped package in violation of 26 U.S.C. § 4704(a) (1964):[9]

In the instant case, [the defendant] was charged with having purchased heroin other than in or from the original stamped package in violation of § 4704(a). As the [above] quoted ex-

---

8. In United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the Court held that the decisions in Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968), and Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), would be retroactively applied to any forfeiture proceedings begun before the date of those decisions and involving the statutes dealt with in those cases. Our decision in this case does not require us to consider questions of retroactivity.

9. 26 U.S.C. § 4704(a) (1964) provides:
(a) General requirement.—It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.
This statute was repealed by Pub.L. No. 91–513, Tit. III, § 1101(b) (3) (A), 84 Stat. 1292 (Oct. 27, 1970).

cerpt describing the scheme of the [Harrison Narcotics] Act indicates, these stamps are to be affixed by either the producer or the importer after he has paid the tax. None of these tasks is the responsibility of the purchaser, who has only one duty under this section—to avoid purchase of unstamped narcotics. Viewed in this light, it is clear, that for [the defendant] "full and literal compliance" left him with the same alternative which the Court found unobjectionable in *Minor*—not to participate in the transaction.

Our view that the stamp provisions of the Act are constitutional as applied to the purchaser of heroin is strengthened by the realization that a prospective purchaser who has fully complied with the order form provisions (26 U.S.C. § 4705(a)) of the Act and thus is legally entitled to buy narcotics, is still under a duty not to purchase unstamped narcotics and may, under a literal reading of the section involved here, be convicted for violating § 4704(a). Thus [the defendant's] contention that the conviction [for violating § 4704(a)] is a violation of the privilege against self-incrimination is rejected.

425 F.2d at 830 (footnotes omitted).

Since the fifth amendment would not provide a complete defense to a prosecution under 26 U.S.C. § 4704(a) (1964) predicated upon the presence of the heroin in the automobile, it will not under the rationale of *Coin & Currency* provide a complete defense to a forfeiture proceeding predicated upon the presence of the heroin in the automobile. On the contrary, since the purchase of heroin other than in or from the original stamped package constitutes constitutionally punishable criminal activity, it may also serve as the basis of a forfeiture pursuant to 49 U.S.C. § 782 (1964), *supra*.[10]

Accordingly, the April 19, 1968, order of the district court decreeing the forfeiture of the automobile will be affirmed.

---

10. The contention that this forfeiture action is barred by Bivens' prior acquittal in the United States District Court for the Southern District of New York on a count charging him "with alleged criminal transportation and concealment of heroin hydrochloride on September 2, 1964" (Appellant's Reply Brief at 15) is not supported by the district court trial record, which contains no evidence of such an indictment or acquittal. We note that the trial judge made this specific finding on which the judgment of forfeiture and dismissal of the counterclaim was apparently based (N.T. 199):

It was established by the government's proof that these envelopes when seized bore no stamps, that there was an unlawful possession.

The statement of defense counsel in support of a motion to dismiss the complaint, made prior to the receipt of any evidence, that "Mr. Bivens was acquitted of having illegal possession of narcotics in this vehicle," was not offered or received in evidence. In any event, it does not establish that the forfeiture proceeding arose out of the same transactions and facts forming the basis of the criminal charge. Assuming that Coffey v. United States, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886), is applicable in a forfeiture proceeding such as this (but cf. Helvering v. Mitchell, 303 U.S. 391, 405–406, 58 S.Ct. 630, 82 L.Ed. 917 (1938)), the Court made clear in *Coffey* at 442 of 116 U.S., at 440 of 6 S.Ct. that "the fraudulent acts and attempts and intents to defraud, alleged in the prior criminal information, and covered by the verdict and judgment of acquittal, embraced all of the acts, attempts, and intents averred in the information in this suit," and again at 443, 6 S.Ct. at 440, that "the existence of the same act or fact is the matter in issue, as a cause for the forfeiture of the property prosecuted in [the] suit *in rem*." On this record, which does not reveal the facts and circumstances underlying, nor the statutory basis of, the criminal prosecution, we cannot reverse the judgment of the district court on the basis of this contention.