**UNITED STATES of America, Plaintiff,**

v.

**Joseph Henry CUSANELLI, Dennis Ray Stanley, Defendants.**

**Crim. No. 9660.**

United States District Court,
S. D. Ohio, E. D.

April 26, 1972.

William Milligan, U. S. Atty., and Robert Zitko, and Robinson Watters, Asst. U. S. Attys., for the United States.

Fred A. Jones, Jr., and Martin Blitstein, Miami, Fla., for defendants.

### MEMORANDUM AND ORDER

KINNEARY, Chief Judge.

This matter is before the Court on defendants' motion to suppress as evidence in this case marihuana allegedly seized in violation of defendants' Fourth Amendment rights. The motion is filed under the provisions of Rule 41(e), Federal Rules of Criminal Procedure. An extensive hearing was held before trial, at which the following facts pertinent to the search and seizure of the marihuana were developed.

On March 20, 1972, United States Customs Agents began surveillance of a twin engine aircraft bearing registration number N-956 Bravo. The surveillance began at an airstrip on Walker Cay in the Bahamas. Agent Lowry, flying a United States Customs aircraft followed the N-956 Bravo from the Bahamas to an airstrip in Florida at New Smyrna Beach where the N-956 Bravo landed and refueled. There are no customs facilities at New Smyrna Beach. Nor did the N-956 Bravo check into any other customs facility. From New Smyrna Beach, the agents in the customs aircraft followed the N-956 Bravo directly to the Ross County Airport in Chillicothe, Ohio where both airplanes landed.

United States Customs Agents stationed themselves on the roadway leading from the airport and stationed one agent within view of the N-956 Bravo as it was parked at the airport. About four and one-half hours after the N-956 Bravo had landed at the Ross County Airport, two pickup trucks with camper units in the truck bed pulled up beside the N-956 Bravo and three men began loading large plastic bags from the N-956 Bravo on to the campers. When the camper trucks left the airport they were stopped by customs agents and the defendants were arrested. The camper vehicles and their contents were searched and seized. The defendants did not consent to the search and seizure.

■ The government argues that the stopping of the two campers was a legitimate "border search". In such case, the government contends, the customs agents would need only reasonable suspicion of illegal activity and not probable cause in order to effectuate a search and seizure. This is a correct statement of the law in regard to "border searches". See, United States v. Hill, 430 F.2d 129 (5th Cir., 1970); United States v. Glaziou, 402 F.2d 8 (2d Cir. 1968), cert. den., 393 U.S. 1121, 89 S.Ct. 999, 22 L. Ed.2d 126 (1969); Rodriguez-Gonzalez v. United States, 378 F.2d 256 (9th Cir., 1967); Thomas v. United States, 372 F.2d 252 (5th Cir., 1967).

■ The custom officer's power to conduct a "border search" is coextensive with the limits of our international border areas. United States v. Glaziou, *supra* 402 F.2d, at p. 12. The term "border area" includes not only the actual land border checkpoints, but also the ". . . checkpoints at all international ports of entry and a reasonable extended geographic area in the immediate vicinity of any entry port." United

States v. Glaziou, *supra*, at p. 13. As such, the "border area" concept is a flexible and elastic one depending upon the particular factual situation presented. United States v. Glaziou, *supra*.

■ From the record before the Court it is clear that the customs agents involved in this case never intended to make a border search for they could have done so at New Smyrna Beach, Florida had they so desired. Rather, the customs agents sought to snare the recipients of the cargo aboard the N-956 Bravo. To do so they allowed that plane to proceed to Chillicothe, Ohio where the apprehension of the campers was made approximately one mile from Ross County Airport. The search and seizure of the campers was not made in a geographical area within a reasonable extension of the immediate entry point. To hold this search to be a "border search" would be to stretch the elastic concept of the "border area" beyond its reasonable breaking point. This the Court declines to do.

Even though the search in this case cannot be upheld as a "border search" it could be sustained if the customs agents had probable cause to search the campers. The customs agents had no warrant when they stopped the campers and made the ensuing search and seizure. The defendants vigorously argue that the customs agents had insufficient probable cause to search the vehicles and alternatively that the agents should have obtained a warrant even if they had probable cause.

■ The Supreme Court has noted that the search of an automobile, or other motor vehicle, on probable cause, and the seizure of goods therein, is dependent upon the reasonable cause the seizing officer has for believing that the automobile contains contraband items. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

The record before the Court reveals that the customs agents had probable cause to believe that the two campers contained contraband. The customs plane kept the suspect plane N-956 Bravo under surveillance from the Bahamas to New Smyrna Beach. The N-956 Bravo did not proceed through the normal customs facilities at any point. The N-956 Bravo was then followed to Chillicothe, Ohio. The pilot of the surveilling plane radioed its approach to the customs agents on the ground at Ross County Airport. Both planes landed there at about 5:30 p. m. on March 20, 1972. The pilot of the N-956 Bravo left the plane and went into Chillicothe. The suspect plane remained near the runway until approximately 9:40 p. m. when three men in the two camping vehicles approached the plane. The campers were backed up to within a few feet of the plane. The three men then began transferring large plastic bags from the plane into the campers. Special Agent McNamara was stationed in the cockpit of a plane parked approximately thirty yards from the N-956 Bravo and the campers. He observed the three men transfer the plastic bags to the campers and radioed this message to the customs agents who had set up a roadblock outside of the access road to the airport.

The campers then left the airport and were stopped by the waiting agents on a public road. The defendants were driving the two camper vehicles. They were arrested and the customs agents took the ignition keys and opened the rear compartments of the campers. Upon entering the campers the agents noticed a strong odor of marihuana. Further search of the campers revealed a number of large plastic bags, containing what was later determined to be marihuana.

■ Since the N-956 Bravo had entered the United States without passing through customs and since the defendants had transferred objects from that plane to the campers in the dark of

night, at a nearly deserted county airport, the customs agents, who were aware of these facts through various radio communications from their fellow agents, had sufficient probable cause to believe that the campers contained items of contraband. The resulting search and seizure of the two campers was not in violation of the defendants' Fourth Amendment rights.

Chambers v. Maroney, *supra*, teaches that where law enforcement officials have probable cause to search a motor vehicle there is no distinction constitutionally between the officers carrying out an immediate warrantless search and the holding of the vehicle before the presenting of the probable cause issue to a magistrate.

Since the customs agents had probable cause to search and seize the campers in this case there was no necessity that a warrant be secured before the agents effectuated the search and seizure.

The Court's decision is not predicated upon the theory that the search and seizure was incidental to the defendants' arrest, but upon the fact that the customs agents had sufficient probable cause to search and seize the campers. As the *Chambers* Court stated in quoting from Carroll v. United States, *supra*:

> The Court also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:
>
>> "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." 267 U.S., at 158–159, 45 S.Ct., at 287.

Chambers v. Maroney, *supra* 399 U.S. at p. 49, 90 S.Ct. at p. 1980.

Whereupon, the Court determines that the defendants' motion to suppress is without merit and is therefore denied.