**UNITED STATES of America**
**v.**
**Antonio Jesus ARBELAEZ.**
**Crim. No. B–100.**

United States District Court,
D. Connecticut.

Jan. 14, 1974.

Stewart H. Jones, U. S. Atty., Andrew S. Bowman, Asst. U. S. Atty., New Haven, Conn., for plaintiff.

James A. Trowbridge, Trowbridge & Creane, John M. Creane, Bridgeport, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO SUPPRESS

ZAMPANO, District Judge.

The defendant, Antonio Jesus Arbelaez, moves to suppress as evidence 253 grams of cocaine hydrochloride which is the subject matter of a three-count indictment charging him with conspiracy to import narcotics, possession of cocaine with intent to distribute, and related charges, in violation of 21 U.S.C. §§ 841(a)(1), 843(b) and 846.

### I.

On August 31, 1972, George Kallnischkies, a New York City mail entry aide with long experience, was in the course of his duties examining foreign mail when his attention was drawn to a cylindrical parcel addressed to a "Tony Arbelo, 151 Boswell Street, Stratford, Connecticut." Although the package was labelled "Impresos" ("printed material") it warranted inspection, in the officer's opinion, for several reasons: (1) the article was sent from Colombia; (2) the wrapping was tightly secured and glued; (3) the weight of the package was almost a pound; and (4) the "feel" of the parcel indicated it contained an item other than a newspaper or magazine.

Kallnischkies removed the package from the flow of mail, opened it, and discovered a bag containing a white powder secreted among the sheets of paper therein. A field test revealed the contents to be cocaine. After a scientific laboratory examination verified the findings of the field test, a "controlled delivery" of the parcel was planned in order to apprehend the smuggler. A small quantity of the cocaine was left in the package, a mail delivery was arranged, and a surveillance of 151 Boswell Street by narcotics agents was commenced on September 19, 1972. After the agents ascertained the parcel was delivered by a postal carrier, they received and executed a search warrant for the premises.

The residence in question was occupied by Manuel Ramirez who informed the agents that Arbelaez was a friend who several days earlier had requested that he, Ramirez, accept a package which would come in the mail addressed to "Tony Arbelo", that as soon as the parcel arrived Arbelaez was to be notified, that prior to delivery Arbelaez had made inquiries concerning the late arrival of the package, and that the reason the Ramirez home was selected for the mail drop was "because Arbelaez did not wish his family to know about the package." At the suggestion of the agents, Ramirez agreed to telephone Arbelaez to request that he pick up the parcel that evening. The agents thereupon stationed themselves in and outside the house. Approximately 25 minutes later, Arbelaez called to ask if "everything was okay." After receiving an affirmative answer, Arbelaez appeared five minutes later at the back door of the house, took the package from Ramirez, and avoided immediate arrest by going through a neighbor's back yard to another street which ran parallel to Boswell Street.

As soon as the agents learned that Arbelaez had eluded them, they pursued him over a fence and apprehended him as he was driving away in his automobile. He was immediately advised he was "under arrest for a violation of the federal narcotics laws" and instructed to leave the car. As he left the automobile, Arbelaez spontaneously stated, "I'll tell you everything. I'll tell you everything about the package." When an agent asked where the package was, Arbelaez pointed to the back seat of the car. A search revealed the parcel containing the cocaine was hidden in a compartment beneath the rear seat. This prosecution followed.

## II.

In the light of the principles enunciated in United States v. Doe (Rodriguez), 472 F.2d 982 (2 Cir. 1973), the defendant's first contention that there was an illegal search and seizure of the package at the port of entry mail facility is clearly without merit. Kallnischkies had ample reasonable cause for detaining and inspecting the parcel. His attention was initially drawn to the item because its origin was Colombia, a country from which, in his experience, many dutiable and contraband articles are mailed to the United States. A closer examination revealed that the package contained no customs declaration and its weight, appearance and feel indicated that it probably contained merchandise subject to duty, in violation of 18 U.S.C. § 545, or, as it turned out, contraband. Thus the warrantless search of the parcel was proper. Cf. United States v. Glaziou, 402 F.2d 8 (2 Cir. 1968).

## III.

The defendant next asserts that the warrantless search of his automobile on September 19, 1972 violated his Fourth Amendment rights.

It is well settled that all warrantless searches, even when based on probable cause, are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L.Ed.2d 576 (1967). The government claims, and the Court agrees, that the facts surrounding the search of Arbelaez's car properly bring the search within the "automobile exception" to the warrant requirement. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

In the instant case, the agents had reasonable cause for their belief that "the contents of the automobile offend against the law," Chambers v. Maroney, 399 U.S. 42, 49, 90 S.Ct. 1975, 1980, 26 L.Ed.2d 419 (1970), and the exigent circumstances justified their proceeding to search the car without a warrant. United States v. Menke, 468 F.2d 20, 22–24 (3 Cir. 1972); United States v. Cusanelli, 357 F.Supp. 678, 680 (S.D. Ohio 1972). The agents were in "hot pursuit" of a suspect who had minutes before surreptitiously picked up a package containing contraband and was attempting to make an escape from apprehension. Cf. Chambers v. Maroney, supra, 399 U.S. at 50–51, 90 S.Ct. 1975. Their intention to arrest the defendant inside the Ramirez home was thwarted by Arbelaez's sudden and unexpected actions in arriving at the rear of the house to accept the package and then retreating in the dark across a back yard onto another street where the escape vehicle was located. The agents had every reason to believe that time was of the essence; the contraband may have been hidden in the car, discarded by Arbelaez enroute to the automobile, or passed on to a waiting confederate nearby. To be effective, an immediate search was necessary; a delay to obtain a warrant was impractical. Cf. United States v. Ellis, 461 F.2d 962 (2 Cir.), cert. denied, 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 115 (1972); United States v. Castaldi, 453 F.2d 506 (7 Cir. 1971). The defendant's reliance on Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) is misplaced. Among other factors unlike the situation here, in *Collidge*, a case involving non-contraband goods, there was "no alerted criminal bent on flight, . . . not even the inconvenience of a special police detail to guard the immobilized automobile." 403 U.S. 462, 91 S.Ct. at 2035. See also Adams v. Williams, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

Moreover, it is significant to note that the agents here were not lightly dispensing with constitutional mandates or intruding upon a privacy interest in a startling, upsetting or chilling manner. They obtained a search warrant from a magistrate just a few hours earlier for the Ramirez home; the developing facts surely justified the issuance of another

warrant for the automobile if time permitted. However, the scene shifted and changed rapidly. Under the circumstances, the agents' actions were both realistic and proper; it was not practicable to obtain advance judicial approval of the search of the car through the warrant procedure.

Although not pursued by the government, the Court is of the opinion the warrantless search was also justifiable as incident to the valid arrest of the defendant. See United States v. Cox, 464 F.2d 937, 946 (6 Cir. 1972); United States v. 1964 Ford Thunderbird, 445 F.2d 1064, 1067 (3 Cir. 1971); cf. Chimel v. California, 395 U.S. 752, 764, n. 9, 89 S.Ct. 2034, 23 L.Ed.2d. 685 (1969). The arrest here comes within the general rule that "a police officer may arrest without warrant one believed by the officer to have been guilty of a felony * * *." Carroll v. United States, supra, 267 U.S. at 156, 45 S.Ct. at 286; cf. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). As previously set forth, Arbelaez was in the process of committing a felony by possession of the cocaine; prompt action by law enforcement officers was necessary to protect themselves, to prevent Arbelaez's escape, and to insure that the contraband was not transferred, hidden or destroyed.

To argue, as the defendant does, that the agents should have obtained an arrest warrant prior to the arrest is to ignore the realities of the situation. In the early afternoon of September 19, the agents did not even know Arbelaez. After interviewing Ramirez, they first learned of a possible nexus between Arbelaez and the narcotics. However, there was not sufficient information known to the agents with reasonable certainty to apply for a warrant. It was reasonably probable that Ramirez concocted the story to extricate himself from an incriminatory position. Also, the scenario was still unfolding; the agents' duty was to follow the package to its ultimate destination in order to apprehend the true malefactor and to conclude the investigation. See United States v. Kulp, 365 F.Supp. 747, 755 (E.D.Pa.1973). It was not until the Arbelaez-Ramirez telephone conversation at 9:00 P.M. that Ramirez's statements received limited verification. At this late hour a United States Magistrate was probably not available. United States v. Menke, supra, 468 F.2d at 23. But even assuming a warrant-issuing authority was immediately available, there was not sufficient time to obtain a warrant because the pickup was scheduled within minutes following Arbelaez's call. Good police work required the agents to make the arrest without delay. Arbelaez's telephone "check" before arriving at the house and his furtive actions thereafter indicate the seeds of suspicion were present in his mind; any delay under the circumstances may well have given him time and cause to exculpate himself.

Accordingly, the defendant's motion to suppress is denied.