Sandra P. DEPTE, Petitioner,

v.

The UNITED STATES, Respondent.

Appeal No. 83-622.

United States Court of Appeals, Federal Circuit.

Aug. 30, 1983.

Gerald B. Lee, Alexandria, Va., argued for petitioner.

Allen C. Peters, Washington, D.C., argued for respondent. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Washington, D.C., Thomas McKeever and Jose Lopez, Philadelphia, Pa., Veterans Administration were on the brief of counsel.

Before RICH, DAVIS and KASHIWA, Circuit Judges.

DAVIS, Circuit Judge.

Petitioner Sandra P. Depte, an employee of the Veterans Administration, challenges the decision of the Merit Systems Protection Board (MSPB or board) that she suffer a 90-day suspension from work for assaulting a Veterans Administration police officer who had arrested her. We affirm.

I

Mrs. Depte was a food service worker at the Veterans Administration Medical Center at Coatesville, Pennsylvania. On January 12, 1981 she was leaving work together with a fellow employee (Ms. Tucker) when there occurred an altercation and scuffle with a Veterans Administration police officer (Mango) who was on duty outside the building. She was charged with attempting to inflict, or inflicting, bodily injury on Officer Mango, found to have done so, and ordered removed.[1] On appeal to the MSPB,

1. She was also charged with other related conduct which was held, either by the employing agency or by the board, not to have been proved.

the presiding official upheld that charge but reduced the penalty to a 90-day suspension. Mrs. Depte's petition for review by the full board was denied.[2]

The presiding official permissibly found, on substantial evidence, the following to be the facts now relevant: Officer Mango was stationed outside the building when Mrs. Depte, accompanied by Ms. Tucker, left work (both carrying bags) and proceeded toward the former's car. Mango suspected Ms. Tucker of improperly taking government property with her, accosted her, and took possession of her shopping bag which apparently contained government goods. He then approached petitioner, who had entered her car, ordered her out of the car, and told her to stand aside. She got out of the car, told him he could not search her car "illegally" and without cause, and refused to obey his orders. While petitioner "was engaged in her rebuffing actions", the officer noticed, through the window of her car, that her vinyl bag on the front seat of the car "contained what appeared to be white institutional size aprons belonging to the agency [the Veterans Administration]". He then told her she was under arrest and directed her to step to the front of the building. When she refused to comply, he tried to force her to obey. She resisted and in the course of doing so brought her hand into contact with the officer's head and face, knocking his glasses off.

After an exhaustive analysis, the presiding official concluded that, in all the circumstances, the officer had probable cause to arrest Mrs. Depte, but he also decided that, of the two participants, petitioner received the worst of the altercation. Again considering all the circumstances, he reduced the penalty from removal to a suspension of 90 calendar days from the effective date of her initial removal.

2. The employing agency did not appeal the presiding official's mitigation of the penalty to a 90-day suspension.

3. His belief that a theft problem existed in that unit of the agency; both petitioner and Ms. Tucker were carrying bulky bags from work; the two women were together; his stopping of Ms. Tucker indicated to him the probability

## II

An important issue petitioner raises is whether Officer Mango had probable cause for arresting her. We agree with the MSPB that he did. The initial circumstances that aroused the officer's suspicion [3] were not sufficient, in themselves, to amount to full probable cause. But his viewing (through the car window) of the vinyl bag containing what appeared to be several white institutional-size agency aprons did provide the crucial information. He then had, and could objectively have, a reasonable belief that petitioner had stolen those Veterans Administration goods. That was enough under the "plain view" doctrine to warrant his arresting her lawfully before she departed in her car. *See Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949–50, 56 L.Ed.2d 486 (1978); *Coolidge v. New Hampshire,* 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971); *Ker v. California,* 374 U.S. 23, 43, 83 S.Ct. 1623, 1635, 10 L.Ed.2d 726 (1963); *United States v. Finnegan,* 568 F.2d 637, 640 (9th Cir. 1977). Because Mango's good faith position was reasonable at that time and place, it makes no difference that it turned out later (contrary to Mango's belief at the time of the arrest) that the agency apparently allowed such aprons to be taken from work and therefore that in fact petitioner had committed no offense.[4] *See Michigan v. DeFillippo,* 443 U.S. 31, 36, 37, 40, 99 S.Ct. 2627, 2631, 2632, 2633, 61 L.Ed.2d 343 (1979); *United States v. Saunders,* 476 F.2d 5, 7 (5th Cir.1973); *United States v. 1964 Ford Thunderbird,* 445 F.2d 1064, 1068–69 (3rd Cir.1971), *cert. denied,* 405 U.S. 964, 92 S.Ct. 1181, 31 L.Ed.2d 239 (1973); *Robbins v. MacKenzie,* 364 F.2d 45, 47 (1st Cir.), *cert. denied,* 385 U.S. 913, 87 S.Ct. 215, 17 L.Ed.2d 140 (1966).

that Ms. Tucker had taken government goods; petitioner's subsequent verbal opposition to Mango's inquiries, even before he indicated he wished to search her or the car; petitioner's verbal opposition to Mango's first requests.

4. Mrs. Depte was acquitted in the state court of illegally taking the items.

■ Even though petitioner may well have subjectively believed that Mango had no cause to arrest her, and that she could resist him, she had no right to resist an arrest that was in fact lawful when made. *Cf. John Bad Elk v. United States,* 177 U.S. 529, 534, 535, 537–38, 20 S.Ct. 729, 731–732, 44 L.Ed. 874 (1900); *Finn v. United States,* 219 F.2d 894, 899–901 (9th Cir.), *cert. denied,* 349 U.S. 906, 75 S.Ct. 583, 99 L.Ed. 1242 (1955). It follows that her resistance and her assault on Officer Mango were legally unjustified.[5]

### III

■ Another of petitioner's points is that the deciding official of the Veterans Administration, before determining Mrs. Depte's case, improperly had an *ex parte* discussion with another police officer (Sterner) who was nearby at the time of petitioner's incident with Officer Mango. The *ex parte* nature of this interview is said to invalidate the employing agency's proceedings and thereby to bar the imposition of any sanction.

Of course, petitioner was not constitutionally entitled, at the agency stage, to confront the witnesses against her, but merely to those procedures mandated by statute or regulation. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Giles v. United States,* 553 F.2d 647, 649 (Ct.Cl.1977). Here, no statute (including the Civil Service Reform Act) and no regulation required an evidentiary hearing at the agency level or prohibited (at that stage) *ex parte* communications with witnesses to an incident of this type. It is settled that the right to make a written and

oral reply (which petitioner received) did not call for such a hearing nor did it preclude the *ex parte* discussion undertaken by the agency. *Grover v. United States,* 200 Ct.Cl. 337, 349–51 (1973), expressly so held. Mrs. Depte later had a full evidentiary hearing (at which Sterner and the agency's deciding official both testified and were subject to cross-examination) before the presiding official of the MSPB.[6] That was adequate under the Constitution, the statute, and the regulations applicable to this case. The prior proceedings at the agency stage were not unlawful.

■ Petitioner relies on 5 U.S.C. § 2302(b)(2), a part of the Civil Service Reform Act of 1978, as showing that the deciding official's discussion with Sterner was prohibited.[7] We are told that, in giving his recollection of the altercation with Officer Mango, Sterner did not talk to the deciding official about any matter allowed to be discussed under subsections (A) or (B) of § 2302(b)(2), fn. 7, *supra.* The short answer is that that provision does not apply to employees of the agency who witnessed or were involved in an incident such as this, but rather relates to statements or recommendations by outsiders, like senators or congressmen; the legislative objective was to forestall political or partisan interference in personnel actions. *See* S.Rpt. No. 95–569, 95th Cong., 2d Sess. 20, reprinted in 1978 U.S.Code Cong. and Ad.News 2723, 2742. It would indeed be amazing if, without saying so, Congress had absolutely prohibited—as § 2302(b)(2) does in those situations to which it applies—a deciding official from interviewing (even with the accused

---

5. Like the MSPB's presiding official, we do not reach the issue of whether she would have had a right to resist if the arrest were unlawful. Appeal No. 83–622

6. This type of hearing at the MSPB level is mandated by the Civil Service Reform Act, 5 U.S.C. § 7701.

7. Section 2302(b)(2) provides as follows:
   (b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

(2) solicit or consider any recommendation or statement, oral or written, with respect to any individual who requests or is under consideration for any personnel action unless such recommendation or statement is based on the personal knowledge or records of the person furnishing it and consists of—
   (A) an evaluation of the work performance, ability, aptitude, or general qualifications of such individual; or
   (B) an evaluation of the character, loyalty, or suitability of such individual;

employee present) another employee who was an eyewitness to the incident. We conclude rather, that the Civil Service Reform Act did not change the pre-existing law in this respect and that the *ex parte* interview with Sterner was proper.

## IV

■ Petitioner also attacks the agency's deciding official (Director of the Veterans Administration's Medical Center at Coatesville) as uninformed on the constitutional aspects of arrests and for that reason unable correctly to decide the legality of Mango's arrest of Mrs. Depte. Again, there is no requirement in the Constitution, statutes or regulations that the agency's deciding official be a lawyer or expert in the legal intricacies of the incident. Petitioner and her counsel could and did present to that official the arguments they wished—legal and otherwise—and if Mrs. Depte lost before the agency (as she did) she would have, and had, a full *de novo* hearing before the MSPB presiding officer who dealt at length and competently with her legal arguments. The agency's decider, a high-ranking officer, fulfilled his function by considering her replies and the facts of the case before he made his decision. See *Dargan v. United States,* 208 Ct.Cl. 993, 993–94, 529 F.2d 532 (1975).

## V

Finally, we have no doubt that petitioner's wrongful resisting and striking of Officer Mango impeded the efficiency of the service and therefore warranted a sanction under the Civil Service Reform Act to promote the efficiency of the service. This was not a private off-duty scrap uninvolved with the government. Mrs. Depte was a government employee just leaving work and still on government premises; Officer Mango was a security guard with the duty to prevent theft of government property from the agency; he was attempting to perform that duty when he sought to question Mrs. Depte and when he arrested her on probable cause; her resistance clearly interfered with and impeded his perform-

ance of his duty. This was quite enough to provide a rational basis for concluding that petitioner's suspension would promote the efficiency of the service. *Alers v. United States,* 633 F.2d 559, 564 (Ct.Cl.1980). There was no need for any additional evidence to support that conclusion. Physical interference of this type with a fellow employee in the very performance of his duty is misconduct which "speaks for itself". *See Strothers v. United States,* 220 Ct.Cl. 642, 644, 618 F.2d 121 (1979); *Schnakenberg v. United States,* 219 Ct.Cl. 697, 699–700, 618 F.2d 120 (1979); *Masino v. United States,* 589 F.2d 1048, 1055–56 (Ct.Cl.1978). Petitioner does not assert that her 90-day suspension was too harsh and it is plain that some sanction was justified.

AFFIRMED.