UNITED STATES of America,
Appellee,

v.

**Larry BROWN, Appellant.**

No. 00–4345.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1 Dec. 17, 2001.

Filed Feb. 28, 2002.

Before SLOVITER, McKEE, Circuit Judges, and HAYDEN, District Judge.

## MEMORANDUM OPINION

McKEE, Circuit Judge.

Larry Brown appeals his conviction following acceptance of his conditional guilty plea to robbery and related offenses stemming from the October 7, 1999 robbery of the Dollar Bank in Monroeville, Pennsylvania. As per his plea agreement, Brown challenges the district court's denial of his motion to suppress. He argues that his warrantless arrest was not supported by probable cause and the evidence seized in the search incident to the arrest should therefore have been suppressed. For the reasons that follow, we will affirm.

## I.

As we write only for the parties, we need not recite the facts or procedural history. We review the district court's determination of probable cause de novo, and the district court's factual findings for clear error. See *United States v. Harple,* 202 F.3d 194, 196 (3d Cir.1999).

## II.

Brown's sole argument on appeal is that his warrantless arrest was not based upon probable cause, and that the evidence seized from the car should therefore have been suppressed as a fruit of the poisonous tree. Brown bases his argument on *United States v. Kithcart,* 134 F.3d 529 (3d Cir.1998). He interprets Kithcart as holding that commonality of race between the defendants and the suspects does not establish probable cause. Brown contends that the FBI agents arrested him because

he and his companions were Black and the suspects were also Black.

Probable cause to arrest exists when a reasonable law enforcement officer has cause to believe that an offense has been committed and that the person being arrested committed it. See *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Paff v. Kaltenbach*, 204 F.3d 425, 436 (2000). Probable cause determinations must often be made on the scene and under pressure. Therefore, they do "not require the fine resolution of conflicting evidence that a reasonable doubt or even preponderance standard demands." *Paff*, 204 F.3d at 436; quoting *Gerstein v. Pugh*, 420 U.S. 103, 121, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Police need only have enough evidence to establish the probability that criminal activity has occurred. This does not rise to the level of establishing a prima facie showing of criminal activity. See *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Moreover, a court will evaluate the totality of circumstances to determine if probable cause to arrest existed. See *id.* at 238.

A warrantless search is per se unreasonable unless police can demonstrate the presence of "exigent circumstances." *Payton v. New York*, 445 U.S. 573, 587 n. 25, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The Supreme Court has recognized that the presence of automobiles can constitute an exigent circumstance due to their "ready mobility." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). Accordingly, we have upheld the warrantless arrest of a motorist and subsequent search of his car where law enforcement had probable cause to believe that the motorist had committed, or was committing, a crime. See e.g. *United States v. 1964 Ford Thunderbird*, 445 F.2d 1064, 1069 (3d Cir.1971).

Moreover, it is well established that a search incident to a warrantless arrest is valid if the arrest itself is valid. See *Kithcart*, 134 F.3d at 531. This also applies to automobiles, as an officer who has lawfully arrested an occupant of a car, may validly search the passenger areas of the car incident to the arrest. See *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

The FBI agents here clearly had probable cause to arrest Brown. Agents received a tip from a confidential informant on October 5, 1999 that Brown was going to rob a bank the next day. This same informant also told agents that Brown had robbed the PNC Bank in the Frankstown Road Mall two weeks earlier. The PNC Bank robbery was "takeover" style, where the robbers went behind the counter and took the money. "Takeover" robberies occur in less than 2% of all Pittsburgh area bank robberies. As a result of this information, agents placed Brown under surveillance over the next two days.

On October 6, 1999, agents observed two Black men arrive separately at Brown's house in the late morning. One arrived in a blue Chevrolet, the other in a tan Dodge. Brown then left his house with the two men in the Dodge. Agents observed they traveled to the same strip mall where the PNC Bank robbery had occurred. The Dodge then "squared" the block by going all the way around it in an apparent attempt to determine if anyone was following. The men then drove the Dodge to another strip mall containing a number of banks. There, one of the occupants left the Dodge and bought something in a department store.

The next day, agents again surveilled Brown. They observed the same blue Chevrolet arrive at Brown's house in the morning. Brown then left his house with

two Black men in the Chevrolet. They drove to the Frankstown mall, and as they drove past the PNC Bank, they looked inside. The Chevrolet then parked, and Brown got out of the car and went into a drugstore. Upon entering the store, he looked into the PNC Bank, and he looked into it again as he was leaving the store. The Chevrolet then "squared" the mall, and parked in a nearby cemetery for a few minutes. The men then returned to the mall, and "squared" it yet again.

The agents next observed the Chevrolet leaving the parking lot of the PNC Bank located at the Squirrel Hill Mall. The Chevrolet returned to the Frankstown Mall, then left the mall, but returned again and parked. Agents saw Brown, who was sitting in the back seat, pull a ski mask over his head while the man in the front passenger seat cracked open the door. However, he then closed the door and the three men sat in the car for eleven minutes. The men then drove to the Great Valley Shopping Center, and parked behind a PNC Bank located there. Two men got out of the car, walked toward the bank, but then returned to the car without entering the bank.

Agents lost track of the Chevrolet around 1:23 p.m. At 1:46 p.m. a radio broadcast reported that the Dollar Bank in the Miracle Mile Shopping Center had just been robbed. That bank is five or six miles from the last place the Chevrolet had been sited. Agents spoke to the branch manager on the phone and were told that the robbery had been "takeover" style, and was committed by three Black men wearing ski masks. Agents immediately proceeded to Brown's house and awaited his return. Shortly after 2 p.m. the Chevrolet returned to Brown's house, and agents arrested Brown and his two companions, Jasper and Charles Stubbs. Agents searched the car pursuant to the arrests

and found incriminating evidence. A search of Brown's person revealed $1000 in $50 bills and a latex glove was discovered in Brown's pocket.

Brown attempts to argue that he was arrested only because he was Black, in violation of Kithcart. However, the agents had much more than race to support their determination of probable cause. The agents had a confidential informant that linked Brown to a previous robbery. The PNC Bank robbery in which Brown was implicated was "takeover" style, as was the Dollar Bank robbery. Over the course of two days, agents observed Brown and his companions drive to a variety of banks, park in malls containing banks, park in a cemetery, take counter-surveillance measures, and look inside the windows of banks. Agents observed Brown put a ski mask over his head in the lot behind a bank, and the bank manager reported that three men wearing ski masks had robbed the bank. Agents lost track of the Chevrolet twenty minutes before the Dollar Bank robbery, when it was only five or six miles from the Dollar Bank.

In light of the totality of circumstances, it is clear that probable cause existed to arrest Brown. As that arrest was lawful, the subsequent search was therefore a valid search incident to a lawful arrest. Consequently, the district court properly denied Brown's motion to suppress evidence.

Accordingly, for all the reasons set forth herein, we will affirm the convictions and judgment of sentence.