UNITED STATES of America, Plaintiff-Appellee,

v.

Harold Dean McKENZIE, Defendant-Appellant.

No. 71–1034.

United States Court of Appeals, Sixth Circuit.

Aug. 10, 1971.

Conrad Finnell, Cleveland, Tenn., for appellant; Finnell, Thompson & Scott, Cleveland, Tenn., of counsel.

Jerry Foster, Chattanooga, Tenn. (John L. Bowers, Jr., U. S. Atty., Chattanooga, Tenn., on the brief), for appellee.

Before MILLER and KENT, Circuit Judges, and McALLISTER, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal from convictions under two counts of possession of unstamped distilled spirits and one count of transporting unstamped distilled spirits, in violation of 26 U.S.C. §§ 5205(a) (2) and 5604(a) (1). The first and second counts concern alleged violations on August 29, 1970 and the third activities on August 30, 1970. In this appeal appellant contends that searches and seizures on those dates violated the Fourth Amendment and hence that evidence obtained from the searches was erroneously admitted into evidence at his trial.

The facts of this case are as follows. Suspecting moonshine activities, a team of agents of the Alcohol, Tobacco and Firearms Division of the Treasury Department, began a surveillance of appellant's residence and barn in rural Tennessee on August 20, 1970. In the woods near appellant's home some agents located an old red truck containing 80 gallons of non-tax paid whiskey in one gallon plastic jugs. The next day, August 21, other agents observed appellant and other unidentified persons unloading the whiskey from this truck and placing it on the ground. One week later, on August 28, Special Investigator Tubb detected the odor of moonshine and saw several men transferring one gallon jugs from another truck into appellant's barn located one-half mile from appellant's home. That truck was later observed parked at appellant's house.

On August 29 agent Tubb typed an affidavit and search warrant authorizing a search of the barn. Later that day the warrant and affidavit were signed by a United States Commissioner. The warrant was dated August 28; the affidavit bore the date August 29.

At 7:00 P.M. on August 29, federal agents observed a 1965 Ford with a white top and light brown bottom proceed to appellant's barn from which appellant and other individuals were seen carrying one gallon plastic jugs of the type commonly used to store moonshine. Because of an obstructed view, the agents could not determine whether any jugs were loaded into the car. The car returned to appellant's home. At approximately 9:00 P.M. appellant was seen driving the apparently heavily loaded 1965 Ford from his home. The car was followed by federal agents dressed in plain clothes and driving in an unmarked car. As they approached the Ford in a rural area approximately ten miles from appellant's home, appellant accelerated his car, drove into a nearby yard, and fled on foot. He was apprehended a few minutes later. While appellant was being chased, a federal agent who had remained with the cars opened the trunk of appellant's Ford and discovered 100 one gallon plastic jugs of moonshine. Appellant was overtaken but later on the same day was released.

The next day, August 30, federal agents, still observing appellant's property, saw appellant proceed to his barn carrying a large oil can. Suspecting arson, the agents walked into the barn and physically seized the appellant. They then smelled gasoline and observed that gasoline had been poured in the area of hundreds of stacked plastic jugs of moonshine. Appellant was arrested and the barn searched. Appellant admitted that his intent was to burn down the barn. He also stated that he then intended to get out of the whiskey business. Appellant was given a copy of the inventory and search warrant the next day.

Appellant filed motions to suppress both the moonshine taken from the car on August 29th and that taken from the barn on August 30th. After an evidentiary hearing, the district court overruled the motions, finding that the search on the 29th was lawful both as incident to a lawful arrest and as the consequence of an abandonment of the car. The court held that the search of the barn on the 30th was valid as the product of a lawful search warrant and as incident to a lawful arrest for arson.

Appellant waived a jury and submitted the case to the district court on the basis of the evidence presented at the evidentiary hearing. The court found appellant guilty as charged. Appeal is from that decision.

## I. Search of Car on August 29

Appellant contends that the arresting officers did not have probable cause to arrest him without a warrant on August 29. Consequently, appellant argues that the subsequent search of his car was unconstitutional. We do not find it necessary to decide whether there was probable cause to arrest the appellant since we hold that there was probable cause to search his car. Thus, irrespective of the validity of the arrest, the search was valid and the moonshine discovered in the search of the vehicle was admissible against the appellant.

■ It is now well-settled that an officer may stop and search a motor vehicle for the purpose of discovering suspected contraband cargo if the officer has probable cause to believe that the automobile he stops contains such contraband. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Freeman, 382 F.2d 272 (6th Cir. 1967). Because of the great mobility of the automobile, "what may be an unreasonable search of a house may be reasonable in the case of a motorcar."

■ In the case at bar, the officers clearly had probable cause to search appellant's white and brown 1965 Ford. One week before the search federal officers had seen appellant unload moonshine from a truck. The day before the car was searched an agent recognized the odor of moonshine and saw one gallon jugs being placed in appellant's barn. On August 29, the day of the search, the agents saw a 1965 white and brown Ford proceed to the rear of appellant's barn. Appellant was seen carrying one gallon white plastic jugs, commonly used for moonshining, from the barn. The Ford, apparently heavily loaded, was later seen driving to, and leaving from, appellant's home. After the vehicle was temporarily stopped by other federal agents, one official detected the familiar odor of moonshine. Appellant then attempted to escape. Under these circumstances, there was probable cause to believe that the Ford automobile was carrying illegal moonshine.

■ The fact that the officers who conducted the search of the car were not the same officers who observed the inculpatory activities is of no consequence, for the former were acting under radio instructions from the latter who clearly had probable cause to conduct the search themselves. This case is therefore controlled by this Court's decision in United States v. Holloway, 391 F.2d 267 (6th Cir. 1968), where, under similar circumstances, we held a vehicular search to be valid.

## II. Search of Barn on August 30

Appellant also argues that the search of the barn on August 30 was illegal because it was based on a constitutionally infirm search warrant that was improperly executed. We find these contentions to be without merit.

Appellant first maintains that the warrant was not issued on probable cause since there "was absolutely no inquiry made by the magistrate as to the identity of the informant or the reliability of the information upon which said search warrant was based." This argument ignores the content of the affidavit which provides in pertinent part:

And the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: During August, 1970 and as late as August 24, 1970, I received information that Dean McKenzie and Martin McKenzie were engaged in large scale distribution of non-taxpaid whiskey. On August 28, 1970 both McKenzie residences were kept under surveillance by officers of the Alcohol, Tobacco and Firearms Division. * * * About 9:30 p. m. the described Ford truck left the Dean McKenzie premises and

from a hill nearby, I saw the truck go directly to and back partially into the aisle of the described barn behind the red brick house. After about 20 minutes, I saw they had started a bonfire out in front of the barn. I moved up to a point about 30 or 35 feet behind the barn in the cornfield from where I could see through the aisle of the barn. The fire was out from the opposite end of the aisle and lighted up that end quite well. I watched for about 5 minutes from that point, and saw full one-gallon plastic jugs handed off the truck and placed in a storeroom at the southeast corner of the barn. One man was on the bed of the truck handing jugs down four at a time (two in each hand). A second man was standing beside the truck passing the jugs into the door of the storeroom. I could see that the jugs were full and I could smell the odor of moonshine whiskey. About 10:30 p. m. the truck left the barn and went directly back to the residence of Dean McKenzie.

I have been an officer of the Alcohol, Tobacco and Firearms Division for over 29 years, engaged in liquor law enforcement primarily, and I am thoroughly familiar with the odor of moonshine whiskey. I also know that for several years in this area it has been the practice to package moonshine whiskey in one-gallon plastic jugs.

> /s/ Roy R. Tubb
> Special Investigat. ATF

Sworn to before me, and subscribed in my presence, August 29, 1970.

> /s/ Charles J. Gearhiser,
> United States Commissioner.

■ It is true that agent Tubb did not give sufficient background facts to merit the issuance of a search warrant *solely* on the basis of the informant's tip. *See, e. g.,* Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Nevertheless, after reading the entire affidavit, the Commissioner properly is-

sued the warrant. The Commissioner was presented with an affidavit in which the affiant, an Alcohol, Tobacco and Firearms Division agent with 29 years experience, whose reliability is not disputed, made oath that he personally observed one gallon jugs, commonly used to package moonshine, being unloaded from a truck and placed in a specified barn. The affiant further stated that he saw that the jugs were full and smelled the recognizable odor of moonshine. Under these circumstances, the affidavit was sufficient in that it contained personal observations of an experienced and reliable federal agent—observations which, in themselves, would merit the issuance of a search warrant authorizing the search of the barn. *Cf.* United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The affiant's statements about the informant's disclosures are mere surplusage that do not detract from the otherwise legally sufficient personal observations of the affiant. "If the teachings of the [Supreme] Court's cases are to be followed and the constitutional policy served, affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." United States v. Ventresca, 380 U.S. at 108, 85 S.Ct. at 746.

■ Appellant also objects to several technical irregularities in the issuance and execution of the warrant. First, it is contended that the warrant and affidavit are somehow defective because they were typed by a federal agent outside the presence of the magistrate. It is not alleged that the magistrate failed to read the warrant and affidavit or that he did not sign the documents. Appellant cites no cases where this so-called "defect" invalidates a warrant or affidavit and we cannot see why it should. With a staggering judicial backlog confronting many courts, we are naturally unwilling to require the magistrate to supervise the typing of the documents he signs. His time should be preserved for more important matters.

Secondly, appellant contends that the warrant is invalid because the supporting affidavit is .dated one day later than the warrant. This argument ignores the fact that the Commissioner testified that the discrepancy was the result of an error in typing the date on the warrant. The Commissioner stated that the affidavit was verified on the same date as, but prior to, the issuance of the search warrant. Considering that the appellant has neither alleged nor shown any prejudice from this typographical error, the warrant is not invalid for such an error. *Cf.* United States v. Averell, 296 F.Supp. 1004 (E.D.N.Y.1969); United States v. Matellian, 31 F.R.D. 233 (D. Mass.1962).

Thirdly, appellant argues that the "greater preponderance" of the evidence is that the officers did not have a search warrant in their presence when they first entered appellant's property. This contention is without merit since the uncontradicted testimony was that agent Tubb, one of the first officers to enter the barn, had a copy of the warrant with him, although he did not personally execute the warrant.

Finally, without citing any authority, appellant contends that the search was fatally defective because he was not served with a copy of the warrant until the day after the search. This argument is also without merit. Although important, the procedures required for execution and return of a search warrant, contained in Rule 41(d) of the Federal Rules of Criminal Procedure, are ministerial. Absent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search. *See* United States v. Haskins, 345 F.2d 111 (6th Cir. 1965); United States v. Gross, 137 F.Supp. 244 (S.D. N.Y.1956); United States v. Klapholz, 17 F.R.D. 18 (S.D.N.Y.1955), aff'd 230 F.2d 494 (2d Cir. 1956), cert. denied, 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454 (1956).

Affirmed.