**UNITED STATES of America,
Appellant,**

v.

**Timothy W. MENKE.**

**No. 72–1319.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 7, 1972.

Decided Oct. 4, 1972.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal by the government from a district court order, 339 F.Supp. 1023, suppressing evidence of the seizure of a supply of marihuana presents the question whether the trial court erred in either or both of its conclusions that there was neither a consensual search nor probable cause for a warrantless search of an automobile. We hold that the court erred in each of its conclusions and reverse.

The circumstances which gave rise to this case reveal a marihuana shipper from Korea who, depending upon one's point of view, must be regarded as either unusually sophisticated or extremely naive, for he shipped a parcel containing ten pounds of marihuana through the Korean and U.S. postal services. The parcel bore Korean Postal Registry No. 62, the return name and address of one Kim Yijum, and was addressed to the appellee at a rural New Castle, Pennsylvania, address. The package was initially intercepted in Seattle, Washington, by U.S. Customs officials who, after consulting other customs and postal authorities, made arrangements for a "controlled delivery" at appellee's premises. Such a plan called for a delivery of the contraband at a specific time, with appropriate law enforcement officers in attendance. Delivery at the addressee's mailbox was set for 11 a. m., February 12, 1970. On that date, agents arrived at appellee's premises, and witnessed the following events: (1) at 4:12 p. m., Menke drove his vehicle to a mailbox situated approximately 200 yards from the house in which he resided with his parents and a sister; (2) he removed the parcel from the mailbox; (3) he placed it in the trunk of his car; (4) he drove the car into the driveway; (5) he removed "a like appearing" package from the trunk, and (6) he entered the house with the package.

After this sequence of events, a warrant to search the premises was duly ex-

—————◆—————

Jay C. Waldman, Asst. U. S. Atty., Pittsburgh, Pa., for appellant; Richard L. Thornburgh, U. S. Atty., Kathleen Kelly Curtin, Asst. U. S. Atty., Pittsburgh, Pa., on the brief.

Warren R. Keck, Jr., Voorhies, Dilley, Keck, Rowley & Wallace, Greenville, Pa., for appellee.

Before KALODNER, VAN DUSEN and ALDISERT, Circuit Judges.

ecuted. Unquestionably, there was probable cause to issue the warrant. Thereafter, as related by the district court in its memorandum opinion, the following took place:

> At approximately 5:00 p. m., the two reunited agents and the postal inspector, together with four state law enforcement officers, approached the house and identified themselves. Presently, the warrant was read to the occupants—the defendant, his father, mother, and sister—the agents, inspector and officers were admitted to the house, and the defendant was given his Miranda warnings. [384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966)] The agents and the postal inspector then searched the defendant's bedroom for the parcel. In the course of the search of the bedroom, the searchers found a Korean mailing registry slip which bore the number 62, a personal telephone book which contained the name and address of Kim Yijum and a list of prices of opium, hashish, marihuana and other narcotics. The search, which lasted approximately 15 minutes, failed however to uncover the parcel.

At this point, there is a substantial dispute as to what happened. The defendant testified that after the agents completed the unfruitful search of his bedroom, they took him outside and made him open the trunk of his automobile. He testified that he was not advised that he didn't have to open the trunk and that he opened it not knowing at the time whether or not he had a right to refuse to open it. On the other hand, one of the customs agents testified that during the course of the search of the defendant's bedroom, the defendant was invited by the other agent to disclose the whereabouts of the parcel which the defendant had been seen removing from the mailbox and that in response to that invitation, the defendant volunteered that the parcel was in the trunk of his automobile and that he was willing to get it if the agents wanted it. Fur-

ther, the agent testified that the defendant advised the agents that it would be easier for him to open his trunk because it had a tricky lock. The parcel containing the marihuana was, by either account, found in the trunk.

The agents and the defendant are also in agreement on two other matters: (1) that the defendant was under arrest from the time the agents entered the farmhouse, and (2) that the defendant was not advised by the agents that he was not legally obligated to open the trunk of his automobile in the absence of a search warrant covering the automobile.

### I.

Granted the existence of probable cause for the issuance of a warrant to search the real estate and the automobile, the problem arises because the area for search set forth in the warrant was limited to the house and did not include the automobile. It thus became essential for the government to establish either a consensual search or to demonstrate probable cause to make a warrantless search of the automobile. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The district court was persuaded that a permissible search in the latter category was limited to those circumstances "where *it is not practicable to secure a warrant* because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." Coolidge v. New Hampshire, 403 U.S. 443, 460, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971), quoting *Carroll, supra,* 267 U.S. at 153, 45 S.Ct. at 285. It found that the "agents were not confronted with 'exigent circumstances' . . . . and there were surely enough law enforcement officials involved in the operation to make one expendable for the purpose of securing a search warrant covering the automobile."

The fallacy of this approach lay in the assumption that after 5:00 p. m., a United States magistrate or district judge or other warrant-issuing authority was immediately available in this rural area of Western Pennsylvania to issue the warrant. The approach also minimizes the reality of the circumstances. The agents knew, from their Seattle experience, that the package did contain marihuana. The agents were eye witnesses to the defendant's acts of removing the package from the mailbox and placing it in his car. The combination of these two factors makes especially appropriate the pronouncement of the Supreme Court in *Carroll, supra,* reiterated in *Chambers,* 399 U.S. 42 at 49, 90 S.Ct. 1975 at 1980, 26 L.Ed.2d 419: "The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband . . . therein which is being illegally transported."

Where an automobile is the subject of the search, the possibility of its movement and the concomitant disappearance of the contraband is a more critical factor than a count of the number of agents present who could be dispatched to a warrant-issuing authority. Even the plurality opinion in *Coolidge,* heavily relied upon by the district court, disclosed: "There was no way in which he could conceivably have gained access to the automobile after the police arrived on his property." 403 U.S. at 460, 91 S.Ct. at 2035. Justice Stewart then explained that after Coolidge was placed under arrest, his wife and child were driven to a relative in another town, "and they stayed with her there until around midnight, long after the police had had the Pontiac towed to the station house." Moreover, Justice Stewart emphasized: "[S]urely there is nothing in this case to invoke the meaning and purpose of the rule of Carroll v. United States . . . no contraband or stolen goods or weapons, no confederates waiting to move the evidence." 403 U.S.

at 462, 91 S.Ct. at 2036. In contrast, here there was contraband. Here, there were three other persons in the residence—the defendant's father, mother and sister. The Korean registry slip was found in the house they occupied. The agents could not have known whether these persons were confederates. And, if they had been, there was nothing to have prevented their moving the car, for they were neither in custody nor under arrest.

The district court overlooked the unassailable logic espoused in *Chambers,* a case also arising out of the Western District of Pennsylvania:

For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained.

399 U.S. at 52, 90 S.Ct. at 1981.

■ Moreover, the district court failed to respect the distinction between the holding in *Coolidge* with respect to non-contraband goods, and the holding in *Carroll* that "contraband goods concealed and transported in an automobile or other vehicle may be searched for without a warrant." 267 U.S. at 153, 45 S.Ct. at 285. This ten-pound package

was found to contain marihuana in Seattle, Washington, and also in New Castle, Pennsylvania, when ultimately opened, and as such constituted contraband within the statutory definition. 26 U.S.C. §§ 4741(a), 4744(a)(2), 7302; 49 U.S.C. §§ 781, 787(d). See also United States v. Galvez, 465 F.2d 681 (10th Cir. 1972) (concurring opinion).

Accordingly, we hold that under the circumstances of this case, there was probable cause to conduct a warrantless search of appellee's automobile, and that the district court erred in finding to the contrary.

## II.

Although our disposition of the probable cause issue is sufficient to return these proceedings to the trial court, we nevertheless consider the consent issue as a separate basis for reversal, standing alone and independently of the other ground. We do this out of caution that any failure by us to comment on the district court's treatment of the consent issue would signify a *sub silentio* endorsement of it. Because we disagree with the court's analysis and its statement of applicable law, it becomes necessary for us to reaffirm explicitly our holding in Government of Virgin Islands v. Berne, 412 F.2d 1055 (3d Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 96, 24 L.Ed.2d 87, rehearing denied, 396 U.S. 937, 90 S.Ct. 261, 24 L.Ed.2d 239 (1969), which was reaffirmed in United States ex rel. Harris v. Hendricks, 423 F.2d 1096 (3d Cir. 1970).[1]

■ In *Berne*, we held that where a defendant is given the detailed warnings mandated by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and thereafter "voluntarily submits to interrogation and freely offers information on the existence and location of specifically identified evidence, and further agrees to surrender the evidence to the police, fully cognizant of his right to remain silent and fully aware that the information he provides may be used against him, the seizure of such evidence does not violate the Fourth Amendment. In such a case, the accused, by his words and actions, has abandoned any privacy or security in the location of the evidence." 412 F.2d at 1062.[2]

1. Although neither *Berne* nor *Harris* were mentioned by name in United States v. De Larosa, 450 F.2d 1057, 1067 (3d Cir. 1971), the principle was therein applied.

2. In general accord with our view are Gorman v. United States, 380 F.2d 158 (1st Cir. 1967); United States ex rel. Combs v. La Vallee, 417 F.2d 523, 525 (2d Cir. 1969), cert. denied, 397 U.S. 1002, 90 S.Ct. 1150, 25 L.Ed.2d 413 (1970); United States v. Goosbey, 419 F.2d 818 (6th Cir. 1970); Byrd v. Lane, 398 F.2d 750, 754 (7th Cir. 1968), cert. denied, 393 U.S. 1020, 89 S.Ct. 625, 21 L.Ed.2d 564 (1969); (*Byrd* does not totally reject the argument, but does seriously impair the validity of United States v. Nikrasch, 367 F.2d 740, 744 (7th Cir. 1966)); United States v. Noa, 443 F.2d 144 (9th Cir. 1971); and Leeper v. United States, 446 F.2d 281, 284 (10th Cir. 1971).

In Modern Criminal Procedure, pp. 293–294, Hall, Kamisar, LaFave, and Israel present the following analysis of the problem:

> Does *Miranda* . . . necessitate a reexamination of the law of consent search? May consent to a search be viewed as a self-incriminating "communication"? In any event, should the protection against unreasonable search and seizure be waived only with the same knowledge and intelligence now required for a valid waiver of the right to remain silent?

The authors query whether police, lacking both a search warrant and probable cause for obtaining one, and in the absence of *Miranda*-type warnings, may "invite" an individual, already in custody, to give them permission to search a designated area. "At least when placed in such a 'custodial' situation, should a suspect be advised that if he refuses permission the police will respect his decision and that he has a right to the assistance of counsel—and 'free' counsel if he cannot afford a lawyer—before he makes up his mind?" No, answer Rosenthall v. Henderson, 389 F.2d 514 (6th Cir. 1968); People v. Ledford, 38 Ill.2d 607, 232 N.E.2d 684 (1967); State v. Andrus, 250 La. 765, 199 So.2d

A fair reading of the district court's opinion compels the conclusion that it found an articulation or a verbalization of an acquiescence or assent to search the automobile, but that this did not amount to a "legal consent." The court found: "In the instant case, the police were . . . confronted . . . with an accused who . . . indeed resorted to 'consent' to search the automobile. . . . We think the defendant most probably merely acquiesced, . . . to the agents' suggestion as to the location of the marihuana." Nevertheless, the court refused to elevate the acquiescence to legal consent. It distinguished the case at bar from *Berne*: "In both *Berne* and *Harris* consent was found, but in neither was the accused under arrest." From this major premise, the court proceeded to characterize the agents' questioning about the location of the marihauna as having "the same effect as a demand or order. The defendant's conduct, then, particularly absent knowledge of his right to refuse the search, cannot be construed to constitute consent."

Regrettably, the district court erred in its major premise; it misread the facts in *Berne*. In the second Fourth Amendment issue in that case, when the defendant informed the police there was a hunting knife in the car, the accused had already been "arrested and taken to police headquarters." 412 F.2d at 1057. "But unlike the first [the seizure of the victim's clothes], there is not doubt that the defendant was 'in custody' at the time of the second seizure, having been arrested and taken to the station." 412 F.2d at 1060. Thus, because the *Berne* Fourth Amendment doctrine clearly applies to one in custody, the attempted distinction by the district court was improper. What was said in *Berne* has

impressive significance here: "Having been warned that anything he said could be used against him, it is inconceivable that his election to . . . deliver [the evidence] up to the police was anything less than a free and voluntary abandonment of his security in this otherwise constitutionally protected area." 412 F.2d at 1061.[3]

Our independent review of the evidence convinces us that a finding of actual assent to the search was proper, and, the district court having imposed an improper impediment to translating this actual assent into legal consent, we hold that the search was consensual and not repugnant to the strictures of the Fourth Amendment.

The judgment of the district court ordering the suppression of the evidence will be reversed.

867 (1967) ; State v. McCarty, 199 Kan. 116, 427 P.2d 616 (1967) ; State v. Forney, 181 Neb. 757, 150 N.W.2d 915 (1967). Contra, see United States v. Blalock, 255 F.Supp. 268 (E.D.Pa.1966) ; United States v. Moderacki, 280 F.Supp. 633 (D.Del.1968).

To the extent that *Blalock* and *Moderacki* conflict with our decisions in *Berne* and *Harris*, they lack persuasive precedential value.

3. Because we have found probable cause to search Menke's automobile, it was not in fact a constitutionally protected area.