UNITED STATES of America,
Appellee,

v.

Joseph A. BOZADA, Appellant.

No. 71-1727.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1972.

Decided Jan. 18, 1973.

Certiorari Denied May 7, 1973.
See 93 S.Ct. 2161.

Daniel P. Reardon, St. Louis, Mo., for appellant.

Roger A. Pauley, Atty., Dept. of Justice, for appellee.

Before MATTHES, Chief Judge, and MEHAFFY, GIBSON, LAY, HEANEY, BRIGHT, ROSS and STEPHENSON, Circuit Judges, sitting en banc.

STEPHENSON, Circuit Judge.

Defendant Joseph A. Bozada appeals from his jury conviction of the charge of unlawful possession of goods which had been stolen from a motor vehicle while moving in interstate commerce in violation of Title 18 U.S.C. § 659. During the course of the proceedings the trial court denied a motion to suppress evidence alleged to have been obtained as a result of an unlawful search and seizure. The sole question presented on this appeal is whether the police search of an unoccupied trailer unit located on a private parking lot without a warrant was in violation of the Fourth Amendment. We agree with the trial court that the search and seizure was lawful.

Sgt. Henry Llewellyn of the St. Louis Metropolitan Police Department received a telephone call from a reliable informant, that a man known to informant as "Mr. Tag" had inquired of informant as to whether he was interested in purchasing about 4400 pairs of shoes at $4.00 per pair. The Sgt. received the telephone call at his home about 8:30 p. m. on April 27, 1971. (During the proceedings below, defendant agreed and stipu-

lated that the information given by the informant was reliable and that probable cause for search existed.) The following morning Tag told informant to meet him at 2:00 p. m. at a designated place and they would be shown the shoes. Llewellyn observed the meeting area through binoculars and saw informant and two other men leave the area about 2:45 p. m. About 4:00 p. m., Sgt. Llewellyn, then back at his office, received a telephone call from the informant indicating that he had received a pair of shoes from a trailer. Llewellyn then met with the informant and obtained the box of shoes. From information contained on the box Llewellyn learned that the shoes were a part of a military shipment from the International Shoe Company destined for Okinawa. They were supposed to have been shipped about January 27, 1971. Informant stated that the name on the trailer was "Bozada" and that the defendant was present when informant obtained the shoes. After Llewellyn ascertained that the shoes were probably "hot", informant made another call to Tag and was instructed to bring $16,000 to Tag's office. He was also advised that shortly, the shoes would be moved to another location where informant was to pick them up.

Llewellyn and informant then drove to the private parking lot where the trailer was parked, arriving at about 4:50 p. m. Informant pointed out the Bozada trailer from which the shoes were obtained. It was hooked up to a tractor and the air brakes set. It was the only trailer hooked up for movement. Another trailer was parked up against the rear end of the Bozada trailer. Llewellyn and two of his men, who had joined him at the scene, watched the tractor-trailer for about an hour. No one appeared. They then moved the tractor-trailer five or six feet to permit access to the back doors, cut the bolts on the doors, and searched the trailer. Shoes were found inside the trailer that had shipping information on the boxes matching the information on the box of shoes previously turned over by the informant. Appellant Bozada was arrested shortly thereafter at another location. The contents of the trailer were the subject of the motion to suppress.

Sgt. Llewellyn testified that he did not attempt to secure a search warrant because of the information he had received concerning the imminent movement of the shoes to another location, plus the difficulties of obtaining a search warrant after 5 p. m.

The trial court in determining that the search without a warrant was valid relied on Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and its progeny Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L. Ed. 629 (1931). Appellant, on the other hand, urges that Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971) controls for the reason that in the instant case, although there was probable cause, there existed no exigent circumstances sufficient to justify the police in searching without a warrant.

It is our view that Coolidge, supra, is readily distinguishable. In Part II–B (403 U.S. 443, 458–464, 91 S.Ct. 2022) Mr. Justice Stewart[1] emphasized that exigent circumstances sufficient to justify a warrantless search simply did not exist.[2] Coolidge's car was regularly parked in the driveway of his house, he was arrested inside the house, he had no access to the automobile after the police arrived on his property, the Coolidge

---

1. Coolidge, supra at 445, 91 S.Ct. 2022 indicates Part II–B was joined only by Mr. Justice Douglas, Mr. Justice Brennan, and Mr. Justice Marshall.

2. Id., at 462, 91 S.Ct. at 2036, "In short, by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant,' Carroll, supra, 267 U.S. at 153, 45 S.Ct. at 285 and the 'automobile exception' despite its label, is simply irrelevant." [Footnote omitted].

property was under the guard of two other officers, the police had known for some time of the probable role of the car in the crime, and the automobile was not then being used for any illegal purpose.

█ In the matter at hand, exigent circumstances did exist. The trailer was being used for an unlawful purpose —to transport stolen shoes, reliable information indicated that it was about to be moved, the tractor-trailer unit was hooked up ready for movement, the owner of the vehicle was not in custody, and there were others who appeared to be involved who were at large.

█ As we read *Coolidge, Carroll* and its progeny remain viable.[3] The automobile exception continues but not under every conceivable circumstance. Exigent circumstances must exist before a warrantless search may be made. A pressing need for a prompt search must be reasonably apparent. United States v. Menke, 468 F.2d 20 (CA3, 1972); United States v. Vivero, 465 F.2d 141, 143–144 (CA9 1972); United States v. Ellis, 461 F.2d 962, 966–967 (CA2, 1972).

In short, we are convinced that exigent circumstances amply justified the warrantless search that was made of the trailer in question. The opportunity to search was fleeting. Movement of the trailer appeared imminent. We are not impressed with the notion that a stakeout or limited seizure of the trailer should have been made while a search warrant was being procured. That could well pose more problems than it would solve. In Chambers v. Maroney, *supra*, 399 U.S. at 52, 90 S.Ct. at 1981, the Supreme Court observed:

"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

We are satisfied that the search in this case meets the test of reasonableness. See, *e. g.*, Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964).

Affirmed.

LAY and HEANEY, Circuit Judges (dissenting).

We respectfully dissent.

" * * * [T]he most basic constitutional rule in [the search and seizure] area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.' * * * ". Coolidge v. New Hampshire, 403 U.S. 443, 454, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (Footnotes omitted.). In our view, the government has failed to sustain its burden.

The truck was, of course, mobile but this fact alone is insufficient to justify a warrantless search.[1] As Mr. Justice Stewart said in *Coolidge*:

" * * * [I]f Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, permits a

---

3. *Coolidge*, at 458–464, 482, 91 S.Ct. 2022.

1. Some Courts have apparently taken the position that the mobility of a vehicle justifies a warrantless search. See, United States v. Sharpe, 452 F.2d 1117 (1st Cir. 1971); United States v. Miles, 445 F.2d 974, 975 (5th Cir. 1971);

United States v. Troiano, 365 F.2d 416, 418 n. 1 (3rd Cir.), cert. denied, 385 U.S. 958, 87 S.Ct. 396, 17 L.Ed.2d 303 (1966); United States v. Walker, 307 F.2d 250, 252 (4th Cir. 1962). Cf., United States v. Gibbs, 435 F.2d 621, 623 (9th Cir. 1970). Other cases support the position taken by Mr. Justice Stewart. See, Cash

warrantless search of an unoccupied vehicle, on private property and beyond the scope of a valid search incident to an arrest, then it would permit as well a warrantless search of a suitcase or a box. We have found no case that suggests such an extension of Carroll. * * *" 2

*Id.* at 461 n. 18, 91 S.Ct. at 2035.

Nor would the fact that the police had probable cause to believe that the truck contained stolen goods justify the warrantless search. Most vehicles which the police have probable cause to search contain evidence of a crime. Thus, to allow warrantless searches on this basis would swallow the warrant requirement in its exception—a result clearly not contemplated by the *Coolidge* Court.

Of course, if the vehicle were being used at the time of the search for an illegal purpose, no warrant would be required. Coolidge v. New Hampshire, supra 403 U.S. at 463 n. 20,[3] 91 S.Ct. 2022. But, the term "being used" requires that someone be in or at the vehicle at the time that the search is carried out. If this were not the case, then the Court would have upheld the search in *Coolidge* because the police carrying out that

---

v. Williams, 455 F.2d 1227 (6th Cir. 1972) ; United States v. Payne, 429 F.2d 169 (9th Cir. 1970). See, generally, E. Cleary, McCormick's Handbook of the Law of Evidence, § 171 at 384–385 (1972) ; 85 Harv.L.Rev. 3, 237–250 (1971) ; C. Wright, Federal Practice & Procedure, § 668 at 73 (1969).

2. Throughout the opinion in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 6 L.Ed. 543 (1925), the Court makes plain that it is talking about a vehicle in motion on the highway. For example:

"* * * It is impossible to get a warrant to *stop an automobile*. Before a warrant could be secured the automobile would be beyond the reach of the officer, with its load of illegal liquor disposed of."

*Id.* at 146, 45 S.Ct. at 283. (Emphasis added.)

"In none of the cases cited is there any ruling as to validity under the Fourth Amendment of a seizure without a warrant of contraband goods *in the course of transportation* and subject to forfeiture or destruction."

*Id.* at 149, 45 S.Ct. at 283 (Emphasis added).

"Thus, contemporaneously with the adoption of the Fourth Amendment, we find in the First Congress, and in the following Second and Fourth Congresses, a difference made as to the necessity for a search warrant between goods subject to forfeiture, when concealed in a dwelling house or similar place, and like goods *in course of transportation and concealed in a movable vessel,* where they readily could be put out of reach of a search warrant. * * *"

*Id.* at 151, 45 S.Ct. at 284 (Emphasis added.)

"* * * [U]nder the rule contended for by defendants, the liquor if carried by one who has been already twice convicted of the same offense may be seized on information other than the senses, while if he has been only once convicted, it may not be seized unless the presence of the liquor is detected by the senses *as the automobile concealing it rushes by.* * * *"

*Id.* at 157, 45 S.Ct. at 286 (Emphasis added.)

The decision of the Court in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931), are also distinguishable from the present case. In *Chambers,* the car was stopped in motion on a public highway. In *Husty,* the car was parked on the highway but occupied, and when police officers approached, its occupant started up the engine. Thus, in both these cases, the opportunity to search might have indeed been fleeting if not carried out immediately.

The cases of United States of America v. Menke, 468 F.2d 20 (3rd Cir. 1972) ; United States v. Ellis, 461 F.2d 962 (2nd Cir. 1972) ; and United States v. Castaldi, 453 F.2d 506 (7th Cir. 1971), cert denied, 405 U.S. 992, 92 S.Ct. 1263, 31 L.Ed.2d 460 (1972), are distinguishable on their facts from the present case but do lend support to the majority's viewpoint.

3. See, United States v. Belcher, 448 F.2d 494 (7th Cir. 1971) ; United States v. McKenzie, 446 F.2d 949 (6th Cir. 1971) ; United States v. Taylor, 428 F.2d 515 (8th Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1208, 28 L.Ed.2d 335 (1971) ; Smith v. United States, 385 F.2d 34 (5th Cir. 1967) ; United States v. Williams, 384 F.2d 988 (4th Cir. 1967) ; United States v. Baxter, 361 F.2d 116 (6th Cir. 1966) ; United States v. Prince, 301 F.2d 358 (6th Cir. 1962).

search had good reason to believe that the vehicle contained evidence of a crime.[4]

It has been suggested that the Court, in *Coolidge*, distinguished between vehicles containing mere evidence and those containing stolen goods or contraband, and that it would deny the right to search a parked vehicle for the former and would sustain the right to search such a vehicle for the latter. It is clear, however, from Warden v. Hayden, 387 U.S. 294, 301, 87 S.Ct. 1642, 1647, 18 L. Ed.2d 782 (1967), that such a distinction has no constitutional basis:

> "Nothing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband. * * * "[5]

We also reject the suggestion that the warrantless search can be justified because the police had reason to believe that the truck was to be moved. Sound police practice requires that the police *assume* that a vehicle containing stolen goods or evidence of a crime will be moved. Unless they act promptly on this assumption, they may lose the opportunity to apprehend those who have committed crimes. But the question remains what form of action is appropriate and constitutional.

It was proper for the police to place the truck under surveillance, and they did just that. For nearly two hours, they watched and waited for someone to come for the unoccupied truck and no one did. During these two hours, they had adequate opportunity to secure a search warrant without incurring the risk that the car would be moved.

There were three officers at the scene, their car was radio-equipped, and the courts were nearby. Thus, one of the policemen at the scene, or someone at headquarters, could have secured the warrant while the others remained at the parking lot.

It would also have been proper for the police to have seized the vehicle if someone came for it before the warrant arrived.

The majority relies on Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), for the proposition that if there is probable cause to search, it is just as reasonable to carry out an immediate search as it is to temporarily seize the car and await a warrant. The Court in *Coolidge* made it clear, however, that *Chambers* cannot be viewed as supporting such reasoning:

> " * * * It is true that the actual search of the automobile in Chambers was made at the police station many hours after the car had been stopped on the highway, when the car was no longer movable, any 'exigent circumstances' had passed, and, for all the record shows, there was a magistrate easily available. Nonetheless, the analogy to this case is misleading. The rationale of Chambers is that *given* [emphasis included] a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station. *Here, we deal with the prior question of whether* [emphasis included] *the initial intrusion is justified.* For this purpose, it seems abundantly clear that there is a significant constitutional difference between stopping,

4. " * * * [G]iven the virtually universal availability of automobiles in our society there is little difference between driving [a container such as a suitcase, trunk, box, briefcase or bag] away and driving it away in a vehicle brought to the scene for that purpose. Of course, if there is a criminal suspect close enough to the automobile so that he might get a weapon from it or destroy evidence within it, the police may make a search of appropriately limited scope. Chimel v.

California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. * * * * "
Coolidge v. New Hampshire, 403 U.S. 443, 461 n. 18, 91 S.Ct. 2022, 2035, 29 L. Ed.2d 564 (1971).

5. See, Chambers v. Maroney, *supra*, 399 U.S. at 62 n. 7, 90 S.Ct. at 1987 (J. Harlan, dissenting) ; United States v. Ellis, *supra* at 461 F.2d 966 n. 4 ; The Supreme Court, 1970 Term, 85 Harv.L.Rev. 3, 243 n. 30 (1971).

seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose. * * * "

Coolidge v. New Hampshire, *supra* 403 U.S. at 463 n. 20, 91 S.Ct. at 2036 (Emphasis added.). As one recent scholarly work put it:

" * * * A broad reading of *Chambers*—that 'movable' vehicles, since they may be detained until a warrant is obtained may also be searched without a warrant—seems indefensible. Clearly the interests underlying the Fourth Amendment would be best served by extending to one whose interest in privacy is at stake the right to choose between an immediate warrantless search and requiring the police to submit the justification offered for the search to a magistrate. * * * "

E. Cleary, McCormick's Handbook of the Law of Evidence, § 171 at 385 (1972).

Furthermore, the proposition relied on by the majority:

" * * * obscures the utility of limitations upon the scope, as well as the initiation, of police action as a means of constitutional regulation. This Court has held in the past that a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957); Go-Bart Importing Co. v. United States, 282 U.S. 344, 356–358, 51 S.Ct. 153, 158, 75 L.Ed. 374, 381–383 (1931); see United States v. DiRe, 332 U.S. 581, 586–587, 68 S.Ct. 222, 225, 92 L.Ed. 210, 216 (1948). The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible. Warden v. Hayden, 387 U.S. 294, 310, 87 S.Ct. 1642, 1652, 18 L.Ed.2d 782, 794 (1967) (Mr. Justice Fortas, concurring); see, e. g., Preston v. United States, 376 U.S. 364, 367–368, 84 S.Ct.

881, 884, 11 L.Ed.2d 777, 780, 781 (1964); Agnello v. United States, 269 U.S. 20, 30–31, 46 S.Ct. 4, 6, 70 L.Ed. 145, 148, 51 A.L.R. 409 (1925)."

Terry v. Ohio, 392 U.S. 1, 17, 19, 88 S. Ct. 1868, 1878, 20 L.Ed.2d 889 (1968) (Footnotes omitted.). Accord, Chimel v. California, 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

We also reject the view that the police were excused from seeking a warrant because the hour was late and they would have difficulty in finding a judge to issue the warrant. The vital protections of the Fourth Amendment cannot be hinged upon the convenience of the police, prosecutors and judges. In McDonald v. United States, 335 U.S. 451, 455–456, 69 S.Ct. 191, 193, 98 L.Ed. 153 (1948), the Supreme Court stated:

" * * * No reason, except inconvenience of the officers and delay in preparing papers and getting before a magistrate, appears for the failure to seek a search warrant. But those reasons are no justification for by-passing the constitutional requirement, as we held in Johnson v. United States * * *.

"We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. * * * And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative."

If the processes of our government are such that police officers are unable to secure search warrants outside of ordinary business hours, then the cure for that problem is not to sacrifice the Fourth Amendment rights of our citi-

zens, but to streamline the warrant procuring procedure.

We agree with the view expressed in the excellent brief of the amicus, that the practicalities of law enforcement should be examined by courts when they review the conduct of law enforcement officers. But we must also consider the requirements of the Fourth Amendment; and when we do, we are inexorably forced to the conclusion that the search here was unreasonable.

Moreover, we are not persuaded that good law enforcement requires that this search be sustained. To the contrary, if we permit the warrantless search of this truck, then we might as well adopt a clearly understood rule that unattended vehicles can be searched at any time or place as long as there is probable cause to make the search. We do not believe that the Supreme Court has gone this far, and we are not prepared to do so.