UNITED STATES of America,
Appellant,

v.

Eric Wesley VALEN.

No. 72–2017.

United States Court of Appeals,
Third Circuit.

Argued March 22, 1973.

Decided May 22, 1973.

Adams, Circuit Judge, concurred and filed opinion.

S. John Cottone, U. S. Atty., Laurence M. Kelly, Asst. U. S. Atty., Scranton, Pa., for appellant.

David Rudovsky, Kairys & Rudovsky, Philadelphia, Pa., Frank G. Harrison, Rosenn, Jenkins & Greenwald, Wilkes-Barre, Pa., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In this appeal by the government from a district court order suppressing the admission of two suitcases of marijuana in a prosecution under 21 U.S.C. § 841 (a)(1), we are called upon to decide whether a government agent, having probable cause to search the suitcases, nevertheless should have obtained a warrant before doing so. The district court held that the general principles of search and seizure applied and that the agent should have obtained the warrant. We are to determine whether "exigent circumstances" were present, United States v. Menke, 468 F.2d 20 (3d Cir. 1972), so as to obviate the necessity for the warrant.

Two suitcases were left at the Tucson, Arizona, offices of Emery Air Freight Corporation on the morning of May 25, 1971, to be shipped by Emery to Eric Valen, the appellee, in Scranton, Pennsylvania. Emery scheduled shipment of the suitcases on a flight leaving Tucson at approximately 12:30 p. m. that same day. Sometime between 11:30 a. m. and 12 o'clock, noon, an Emery employee, Dennis Thompson, detected an odor of marijuana emanating from this baggage.

He immediately opened the suitcases and discovered them to be chock-full of the contraband weed.

Thompson notified the U. S. Customs office at Tucson International Airport, and thereafter delivered the suitcases to the airport and identified them to Special Agent Donald Clements. Thompson advised Agent Clements that he had smelled marijuana but did not tell him he had opened the suitcases and seen the contents.

Special Agent Clements learned that the suitcases were scheduled to be shipped to Scranton, Pennsylvania, on a flight departing within the hour and, upon examining the suitcases, he too detected the smell of marijuana. He, too, opened them and saw the marijuana. The suitcases were thereafter turned over to the Bureau of Narcotics and Dangerous Drugs (BNDD) for further investigation.

BNDD agents conducted a further search of the suitcases preliminary to arranging for a controlled delivery at Scranton, Pennsylvania. Twelve hours after their originally scheduled departure, the suitcases were shipped to Scranton via New York City by commercial airline under the surveillance of BNDD agents.

On May 27, 1971, Valen appeared at the Scranton-Wilkes-Barre Airport office of Emery, claimed the suitcases, left the airport building, placed the suitcases in the trunk of his car and began to drive away. He was arrested leaving the airport by BNDD agents who opened the trunk of Valen's car, seized the suitcases and immediately opened them, verifying the contents to be forty-four pounds of marijuana.

Valen filed a motion to suppress, contending that the various openings of his suitcases were warrantless searches and, as such, offended the Fourth Amendment. The district court agreed, observing that the critical search was the examination by Agent Clements. The court specifically found that although Clements had probable cause to search,

and "under the circumstances a search warrant could not have been obtained at the [Tucson] airport [, ...he] could have notified government officials at either New York or Scranton and a warrant [could have been] obtained and the suitcases searched at either of these locations." United States v. Valen, 348 F.Supp. 1163, 1167–1168 (M.D.Pa.1972).

At the suppression hearing, Thompson testified that on a previous occasion he had supplied Customs agents with similar information for which assistance he had been paid $375.00, and that he was told by Agent Clements to notify Customs officials if he came across anything suspicious in the future. For the information supplied in this case, Thompson was paid $100.00 by the government. Valen would have us conclude that this association with a government law enforcement agency was sufficient to render Thompson himself a government agent. Such a conclusion is essential to justify suppression on the theory that Thompson's search was tantamount to that of a government agent. Activities of government agents, as distinguished from those of private persons, come within the ambit of the exclusionary rule if the conduct is violative of the Fourth Amendment. Burdeau v. McDowell, 256 U.S. 465, 41 S. Ct. 574, 65 L.Ed. 1048 (1921); United States v. Goldberg, 330 F.2d 30, 35 (3d Cir.), cert. denied, 377 U.S. 953, 84 S. Ct. 1630, 12 L.Ed.2d 497 (1964). We are satisfied that the minimal contacts between Thompson and the government do not make out a prima facie case of government participation in Thompson's search.

Circumstances are not present here as existed in Corngold v. United States, 367 F.2d 1 (9th Cir. 1966) (en banc), in which a search by an airline employee was conducted at the request and under the supervision of government agents. Thompson was requested to do no more than report suspicious parcels; no attempt was made by the government to use him to do that which the agents themselves were forbidden to do. Thomp-

son's testimony fully supports the court's conclusion that his search was conducted solely as a private party in order to protect himself and his employer, Emery. *See* Gold v. United States, 378 F.2d 588 (9th Cir. 1967).

■ Moreover, the district court found that the status of Thompson as a private party or a government agent was immaterial because Thompson had not told Clements that he had previously opened the suitcases; he had told him only that he had detected the odor of marijuana. We agree with the district court's conclusion that no activity on the part of Thompson tainted the subsequent activity of Agent Clements. We therefore do not have the problem of the fruit of the poisonous tree doctrine, Wong Sun v. United States, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). As we said in United States v. Barrow, 363 F.2d 62, 66 (3d Cir. 1966), cert. denied, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967): "The doctrine 'excludes evidence obtained from or as a consequence of lawless official acts, not evidence obtained from an "independent source." ' Costello v. United States, 365 U.S. 265, 280, 81 S.Ct. 534, 542, 5 L.Ed.2d 551 (1961)." In this case, Clements' personal detection of the smell of marijuana is the independent basis of Clements' search.

· This brings us to a consideration of what the district court properly characterized as the critical issue in the case, the Tucson Airport search by Agent Clements.

In the district court the government placed great dependence upon the "border search" doctrine as justification for Clements' warrantless search. This contention is not pressed on appeal. Rather the government relies on the "exigent circumstances" exception to the warrant requirement announced in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and refined in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and United States v. Menke, *supra.* This exception to the warrant requirement, authorized for certain automobile searches, is premised on the theory that the mobility of the automobile presents a danger that contraband will move or disappear. Justice White put it succinctly: "But when there are exigent circumstances, and probable cause, then the search may be made without a warrant, reasonably." Chimel v. California, 395 U.S. 752, 773, 89 S. Ct. 2034, 2046, 23 L.Ed.2d 685 (1969) (dissenting).

■ The "exigent circumstances" exception is not a per se rule to be applied indiscriminately to every automobile containing contraband, nor should it be applied to every object that has the capacity for movement. Rather, its application should depend upon an evaluation of attendant circumstances. At a very minimum there must be probable cause to make a search for contraband. In United States v. Menke, *supra*, 468 F.2d at 23, we noted that a critical "distinction [exists] between the holding in *Coolidge* with respect to non-contraband goods, and the holding in *Carroll* that 'contraband goods concealed and transported in an automobile or other vehicle may be searched for without a warrant.' 267 U.S. at 153, 45 S.Ct. at 285." A further consideration is the reasonable possibility of the agent's loss of dominion and control over the object to be searched and the consequential loss of the contraband contained therein. *"Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." Chambers v. Maroney, *supra,* 399 U.S. at 51, 90 S.Ct. at 1981. This consideration should be balanced with the time which would be required to obtain a search warrant after it has been determined there is probable cause to make the search.

■ Turning to the instant case, the government contended there was prob-

able cause for Clements to make the search. The district court agreed. Additionally, the government emphasizes the extremely high mobility factor of the suitcases confronting Agent Clements. They were due to leave Tucson by air within the hour. They were destined for Scranton, Pennsylvania, with at least one plane change at New York. The agent did not know then whether the freight company was committed to shipping these bags on this particular flight. On the basis of these circumstances, considered at the time of Clements' action, without the benefit of hindsight or later developments, it was reasonable for the agent to recognize the very real possibility that the contraband could disappear: an air freight handler could have removed the contraband in Tucson, New York, or Scranton. Thus, it was reasonable for him to conclude that a very real possibility existed that the government could lose the contraband, important evidence of a possible violation of federal laws. There was testimony that a minimum of six hours was required to obtain a search warrant. Under the totality of these circumstances, we hold that there were "exigent circumstances" to make the search without the warrant.

At oral argument, Valen contended that at best the government had the right to "seize" and detain for a reasonable time, United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), but no right to "search." However, as *Chambers* indicated with respect to temporary detention as an alternative to an immediate warrantless search, "[W]hich is the 'greater' and which the 'lesser' intrusion is itself a debatable question. . . ." 399 U.S. at 51, 90 S.Ct. at 1981. Applying the language of that case to the case at bar:

> For constitutional purposes, we see no difference between on the one hand seizing and holding a [suitcase] before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate

search without a warrant. . . . [Where there is the danger of disappearance of contraband] there is little to choose in terms of practical consequences between an immediate search without a warrant and the [suitcases'] immobilization until a warrant is obtained.

399 U.S. at 52, 90 S.Ct. at 1981.

Accordingly, we hold that Clements' warrantless search of the suitcases was constitutionally permissible.

█ As to the activities of the BNDD agents, it would exalt form over substance to have required them to have obtained a warrant to conduct a confirmatory search of the suitcases. Valen has not indicated any manner in which the BNDD search is distinguishable from that of Clements'; we view the two searches as constitutionally indistinguishable. We may consider the suitcases as seized and searched by Agent Clements. Without belaboring the point, the mere closing of the suitcases by Clements for transport to the BNDD does not make each reopening of the suitcases a new search. *See* Westover v. United States, 394 F.2d 164 (9th Cir. 1968). *Chambers* makes clear that the right to search which attaches at the time of seizure, continues to exist for a reasonable time after the seizure. *See also,* United States v. Dento, 382 F.2d 361 (3d Cir.), cert. denied, 389 U.S. 944, 88 S.Ct. 307, 19 L.Ed.2d 299 (1967). We conclude, therefore, the search in Arizona by BNDD agents was not prohibited.

█ Unlike the BNDD search in Arizona, the Scranton search is distinguishable from Clements' search. First, the suitcases must be viewed as no longer in the exclusive custody of the government at the time of the search. Although agents continued to observe the movement of the suitcases, Valen had asserted a possessory interest over them. Second, the suitcases were removed from the locked trunk of Valen's automobile. The opening of the trunk, even though for the singular purpose of obtaining

the suitcases, was a separate search; and we have concluded that this search is controlled by United States v. Menke, *supra.*

Having concluded that none of the searches here involved violated Valen's constitutional rights, we do not consider Valen's "fruit of the poisonous tree" arguments.

The order of the district court suppressing the marijuana evidence will be reversed.

ADAMS, Circuit Judge (concurring).

If the issue presented in this appeal were one of first impression; I would be inclined to distinguish *"searches"* from *"seizures"* for the purpose of determining to what extent, if any, the government may properly (1) detain a person's suitcase (seizure), and (2) examine its contents (search), without first obtaining a warrant before either step (1) or step (2).

The Court here holds that under the "exigent circumstances" doctrine both the warrantless seizure of appellant's suitcase and the warrantless search of its contents squares with the requirements of the Fourth Amendment. My view, as applied to the present case, would be that while sufficient probable cause existed for the warrantless seizure of appellant's luggage, the subsequent warrantless search of the suitcase's contents by Agent Clements violated the Fourth Amendment.

As the majority so well states, the basis for the "exigent circumstances" doctrine is: "This exception to the warrant requirement, authorized for certain automobile searches, is premised on the theory that the mobility of the automobile presents a danger that contraband will move or disappear." Bearing in mind that where the logic of a rule stops so should the application of the rule itself, my view, that in cases such as the present one a distinction should

be made between warrantless seizures and warrantless searches, is bottomed upon the notion that the government's valid interest in preventing the movement or disappearance of contraband is adequately and satisfactorily served by allowing the seizure of the property in question (here, a suitcase). At the same time, no legitimate interest in effective law enforcement would seem to justify the greater and further intrusion of a warrantless search of the already immobilized property, be it an automobile or a suitcase.

It appears, however, that the Supreme Court, in Chambers v. Maroney, 399 U. S. 42, 51–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), has rejected any such proffered distinction between warrantless searches and warrantless seizures.[1] And, since *Chambers* is not, in my judgment, sufficiently distinguishable from the present case to permit either a different analysis or result here, I am impelled to concur in the result reached by the majority opinion.

---

1. The Supreme Court not only rejected this distinction, but did so in the face of Justice Harlan's dissenting opinion that suggested an analytical approach similar

to the view advanced in this concurring opinion. *See* Chambers v. Maroney, 399 U.S. 42, 61–65, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (Harlan, J., dissenting).